Crum *v.* Bliss.

---

———•♦•———

JOHN A. CRUM AND ANOTHER, EXECUTORS, *vs.* LUTHER B. BLISS. AND OTHERS.

A statute of the State of New York provides that "no person having a husband, wife, child, or parent, shall by his will bequeath to any charitable corporation more than one-half of his estate after the payment of his debts, such bequest

to be valid to the extent of one-half, and no more." Held not to affect a bequest made by a testator domiciled in this state to a charitable corporation located in the state of New York.

In construing a statute of another state, this court will adopt the construction given to it by the highest court of that state.

A bequest was made to a charitable corporation located in the state of Pennsylvania. After the will was made and before the death of the testator the legislature of Pennsylvania authorized the corporation to transfer its entire property and franchise to a corporation established in the state of New York for the same charitable purpose, which corporation was to become its legal successor and hold and enjoy all its corporate franchises and powers. The legislature of New York authorized the New York corporation to receive the property and franchise of the Pennsylvania corporation. The transfer was effected, and the New York corporation thereafter carried on, and at the time of the testator's death was carrying on, the same charitable work that had been carried on by the Pennsylvania corporation, using the same means and employing the same agencies. The legacy was a general one, with no directions as to the objects for which or the class of persons for whose benefit the money was to be applied. Held that the legacy lapsed.

If the corporation had been made a trustee to carry out a designated trust, another trustee might have been appointed to execute the trust.

The amount given by the lapsed legacy became intestate estate.

Suit by the plaintiffs, as executors of Ira Bliss, for advice as to certain questions arising under the will; brought to the Superior Court in Fairfield County.

Ira Bliss, the testator, died April 10th, 1868, leaving a will dated November 16th, 1870, of which the following is the only part important to the present case :—

" I direct my executors to divide all the rest, residue, and remainder of my estate into six equal shares, and I give, devise and bequeath the same as follows :—One such sixth equal share I give and bequeath to the American Bible Society, formed in New York in the year 1816, to be applied to the charitable uses and purposes of said society. One other such sixth equal share I give to the Board of Foreign Missions of the Presbyterian Church in the United States of America, to be applied to the charitable uses and purposes of said board. One other such sixth equal share I give to the American Board of Commissioners for Foreign Missions, to be applied to the charitable uses and purposes of the said board. One other such sixth equal share I give to the Trustees of the Board of Domestic Missions of the General Assembly of the Presby-

terian Church in the United States of America, to be applied to the charitable uses and purposes of the said board. One other such sixth equal share I give to the American Tract Society, instituted in the city of New York, to be applied to the charitable uses and purposes of said society. The remaining sixth equal share I give to the New York City Mission and Tract Society, instituted in the city of New York and incorporated by the legislature of the state of New York, to be applied to the charitable uses and purposes of said society."

The questions submitted to the court were :—

1st. Whether said will is valid so far as it gives more than one-half of the testator's estate to religious and charitable corporations incorporated under the laws of the state of New York.

2d. Whether such of the legatees in such will as are charitable and religious corporations, incorporated and existing under the laws of the state of New York, are entitled to receive more than one-half of the testator's estate.

3d. Whether the legacies given by said will to the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States have lapsed, and if not, to whom said legacies should be paid. ·

A statute of the state of New York, passed in 1860, provides as follows :—

" No person, having a husband, wife, child, or parent, shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or corporation, in trust or otherwise, more than one-half part of his or her estate, after the payment of his or her debts ; and such devise or bequest shall be valid to the extent of one-half and no more."

At the time of the execution of the will the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, one of the six corporations named in said will was a corporation organized in the year 1841, under the laws of the state of Pennsylvania.

On April 19th, 1872, an act was passed by the legislature

of the state of New York incorporating the board of Home Missions of the Presbyterian Church in the United States of America, the sixth section of which was as follows:

" § 6. Whenever the requisite power shall be given by the proper authority of the state of Pennsylvania to the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, a corporation created and established and now existing under the laws of the said state of Pennsylvania, to assign, transfer, convey and deliver unto the corporation created by this act all the property, estate and rights of any and every description, held or enjoyed, or which may be hereafter held or enjoyed by said corporation first named in this section, by virtue of any gift, grant, bequest or devise, or otherwise howsoever, then the said corporation hereby created is hereby authorized to accept and receive the assignment, transfer, conveyance and delivery aforesaid, and shall be and is hereby declared to be the legal successor of the said Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, and shall have, hold, use and enjoy all the corporate powers, franchises and privileges of the said corporation last named, and all the property, estates and rights which may be so assigned, transferred, conveyed and delivered in the same manner and to the same extent as the said corporation last named might have done, and shall be entitled to receive, sue for and recover all legacies, devises, bequests and property which have heretofore been or may hereafter be made or given to the said corporation last named; provided however, and it is hereby expressly declared, that the said corporation created by this act, shall receive and hold the said property, estates and rights upon the same trusts and for the same uses and purposes only as the same are or otherwise would have been held by the said Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, heretofore created by virtue of the laws of the state of Pennsylvania; and it is hereby further provided and declared, that all grants, conveyances,

devises and bequests, which, after the several assignments, transfers and conveyances hereinbefore authorized to be made to the corporation created by this act, shall have been made and completed as hereinbefore directed, shall be made or which shall purport to be made to the Presbyterian Committee of Home Missions, or to the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church hereinbefore named, shall be deemed and taken to be made to the corporation hereby created, with the same effect as if made to such new corporation hereby created."

On the 29th of January, 1873, an act was passed by the legislature of the state of Pennsylvania, entitled " An Act to authorize the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church in the United States of America, to transfer the property held by them to the Board of Home Missions of the Presbyterian Church in the United States of America, and to declare the latter corporation to be the legal successor of the former." This act authorized the Trustees of the Board of Domestic Missions of the General Assembly of the Presbyterian Church " to grant, assign and transfer, convey and deliver all property, estates and rights, real, personal and mixed, of every kind and description, then held and enjoyed by them, and which might thereafter be received, held or enjoyed by them in any manner whatsoever, unto the Board of Home Missions of the Presbyterian Church in the United States of America, which latter corporation is hereby declared to be the legal successor of said former corporation ; " and further enacted that the New York corporation " shall hold, use and enjoy all the corporate powers, franchises and privileges of the said Pennsylvania corporation, and all the property, estates and rights so granted, in the same manner and to the same extent as said Pennsylvania corporation might have done, and shall be entitled to receive, sue for and recover all legacies, devises, bequests and property which have heretofore been or may hereafter be made, given, or granted to the said Pennsylvania corporation."

Thereafter, on March 24th, 1873, in pursuance of the provisions of the act, the Pennsylvania corporation executed and delivered to the New York corporation an assignment of all its property, assets and rights, real, personal and mixed, of every kind and description, and wheresoever the same might be situated, which then were held or enjoyed by the Pennsylvania corporation, or which might thereafter at any time be received, held or enjoyed by it, including the right to receive, sue for and recover all legacies, devises, bequests and property which had theretofore been or might thereafter be made, given or granted to the Pennsylvania corporation, to have and to hold upon the same trusts and for the same uses and purposes only as the same then were or otherwise would be held by the Pennsylvania corporation.

Since the transfer the Pennsylvania corporation has had no separate office or place of business, and has not held meetings or elected officers as a separate organization. The New York corporation has ever since carried on in its own name the same work as was previously carried on by the Pennsylvania corporation. It has done this under the same church authority, in the same field, by the same means, and with the employment of the same missionaries and other agencies as were previously employed by the Pennsylvania corporation; and the Pennsylvania corporation has not, since the transfer, as a separate organization or in its own name, carried on the work or any part of it, or contracted any obligations relating thereto. Since said transfer, legacies, bequests and donations have sometimes been made to the name of the Pennsylvania corporation, and applications for aid and other correspondence have sometimes been addressed to it; but the New York corporation has collected and paid into its own treasury such legacies, bequests and donations, and has answered all such applications for aid and other correspondence as were received. Such donations, legacies, bequests and correspondence have, in some instances, been received primarily by persons formerly officers of the Pennsylvania corporation, and, in such cases, have been forwarded by them, as an act of courtesy, to the New York corporation for acknowledgment or reply.

The testator left a widow. His estate consisted of personal estate amounting to $102,419, nearly all of which was invested in the city of New York, and real estate in Stamford, in this state, where he lived, of the value of about $9,000.

Upon the foregoing facts the case was reserved for the advice of this court.

*E. Smith,* of New York, and *S. E. Baldwin,* with whom was *J. H. Whiting,* for the executors.

*C. E. Tracy,* of New York, for the American Bible Society.

*E. Parsons,* of New York, and *J. H. Olmstead,* for the Board of Home Missions of the Presbyterian Church, and other New York corporations.

*H. Wallis,* of New York, and *M. W. Seymour,* for the heirs-at-law and next of kin.

PARK, C. J. It appears in this case that the testator was domiciled in the town of Stamford, in this state, at the time of his death ; that he died, leaving a widow, and a large amount of personal estate, which, with a trifling exception, was located in the state of New York ; that by his last will he bequeathed much the larger part of his property, after the payment of all his debts, to certain religious and charitable institutions incorporated by the state of New York and located in that state, to be expended by them in the various charitable operations in which they were engaged under their corporate powers ; that by a statute of the state of New York, which was in existence at the time the will was made, and at the time the testator died, it is provided that " no person having a husband, wife, child or parent shall, by his or her last will and testament, devise or bequeath to any benevolent, charitable, literary, scientific, religious or missionary society, association or incorporation, in trust or otherwise, more than one-half part of his or her estate after the payment of his or her debts ; and such devise or bequest shall be valid to the extent of one-half, and no more."

These are the principal facts in the case connected with the charitable bequests referred to ; and the first question on which our advice is asked is, whether the New York statute applies to these bequests to the New York corporations, and renders them inoperative so far as they exceed one-half of the net estate of the testator.

It is claimed by the corporations that the statute applies only to the testators themselves, and renders them incapable of bequeathing for charitable purposes more than the half of their estates, and that inasmuch as it can have no extra-territorial effect, it cannot affect testators who at the time of their death were domiciled in other states ; and that consequently the bequests in this case to those corporations are valid to their whole extent.

It is claimed by the heirs of the testator that the statute applies to the corporations themselves, and renders them incapable of receiving more than a moiety of an estate like the present one ; and that consequently the bequests in this case are inoperative so far as they exceed the half of the estate, notwithstanding the testator was domiciled in the state of Connecticut at the time of his death.

We come, then, to the consideration of the New York statute, for manifestly the question hinges upon its construction.

We think it is clear, as the heirs of the testator claim, that the courts of this state must be governed in their construction of this statute by the construction which has been given to it by the courts of New York. If such construction disqualifies the corporations generally from receiving unlimited bequests, they must be everywhere so disqualified. This was so held in the recent case of *Chamberlain* v. *Chamberlain*, 43 N. York, 424, where the question was examined with great learning and ability.

Obviously the construction given to a statute by the highest tribunal of the state where it was enacted has all the force and effect it could possibly have if it was a part of the statute itself. Hence the statute, and the construction given to it, go together to inform the tribunals of other states what

the law is on that subject in the state from whence they come.

What then is the construction which has been given to this statute in the state of New York? We recently had occasion to consider the subject in the case of *White* v. *Howard*, 38 Conn., 342, in relation to a statute of that state nearly identical with this and in a case similar to the present one. The statute in that case provided that "no person, leaving a wife, child or parent, shall devise or bequeath to any benevolent, charitable, scientific or missionary society, more than the one-fourth part of his or her estate, after the payment of his or her debts, and such devise or bequest shall be valid to the extent of one-fourth." It was considered in that case that the statute was intended to protect the interests of parents, wives and children, and inasmuch as it could have no extra-territorial effect, it could have no application to testators domiciled in other states than New York. And it was further considered that the last clause of the statute—"and such devise or bequest shall be valid to the extent of one-fourth,"—had reference solely to the devises and bequests described in it, as clearly appears from the words "*such* devise or bequest." Therefore if the first part of the statute applied only to testators domiciled in the state of New York, (as was clearly the case,) the last clause was as clearly limited to such devises and bequests as were made by testators domiciled within that state. Hence it was held that the corporation was not disqualified to take the devise made in Connecticut to its full extent. It is true that the court in giving its opinion used some language that is open to possible misconstruction; for instance, the court says—"Now this corporation brings with it from New York its charter, but it does not bring with it the New York statute of wills, and cannot bring it to be recognized as law within this jurisdiction. There is an obvious distinction between an incapacity to take created by the statute of a state, which is local, and a prohibitory clause in the charter, which everywhere cleaves to the corporation."

This language gives some countenance to the claim, which

has been made in this case, that the court held that a foreign corporation could not be rendered incapable of taking property by devise in this state, by a statute of the foreign state where the corporation is located. But the court used the language it did for the purpose of stating the distinction between a disqualification in the charter of a foreign corporation, which cleaves to the corporation everywhere, and a statute of the foreign state, which makes only a local disqualification in fact, as did the statute then under consideration.

The view we took of the statute in that case is the view we now take of this statute, and we do not understand that the courts of New York have given it a different construction. Indeed it is difficult to conceive how there can be different opinions regarding its construction. The last clause of the statute is limited in its application to the first clauses of it, as clearly as language can make it, and it can not be seriously claimed that the first clauses can affect testators domiciled in other states than New York. No doubt the legislature of New York can, at any time, pass a disqualifying statute, that will render inoperative bequests made to these corporations, no matter where made; but the statute under consideration fails in our judgment to do this.

But it is said that the design of the statute was to prevent these corporations from accumulating unlimited sums of money; and that bequests from other states than New York come within the spirit of the prohibition. If such was the design of the statute, it is strange that the legislature did not directly limit the amount the corporations should receive, as in many other cases. The amount they may receive under this statute, even with its claimed construction, is almost as unlimited as it would have been without any prohibition whatsoever. All persons, everywhere, may give them as much of their property as they please while in life. The amount of bequests is unlimited in the case of testators who have no parent, wife or child. A Vanderbilt could bequeath millions to them within the statute. Obviously the design of the statute has signally failed, if this claim is correct.

We think the New York corporations are entitled to receive in full the bequests which have been made to them.

In regard to the bequest made to the Pennsylvania corporation, we are of opinion that the legacy has lapsed, and we come to this conclusion for two reasons.

The first reason is, that the corporation became extinguished before the death of the testator. In the year 1873 the legislature of Pennsylvania authorized the corporation to transfer all its property, franchise, privileges and rights, both present and future, to a New York corporation, which should thereupon become its legal successor, and should hold and enjoy all the corporate powers, franchises, privileges and property of the Pennsylvania corporation, in the same manner and to the same extent as the Pennsylvania corporation could have done. The legislature of the state of New York authorized the New York corporation to receive the property, franchise, privileges and rights, existing and future, of the Pennsylvania corporation. Such a transfer was soon after made by the Pennsylvania corporation to the New York corporation in as full and ample a manner as it was authorized to be done; and ever since the New York corporation has carried on the same work as that previously carried on by the Pennsylvania corporation, under the same church authority, in the same field, by the same means, and with the employment of the same missionaries and other agencies; while the Pennsylvania corporation has been to all appearance defunct, as it undoubtedly was in fact. How it can be claimed that the Pennsylvania corporation could have any existence for any purpose whatever after its franchise was gone, it is difficult to conceive. The franchise of a corporation is its life—its being. " A franchise is a particular privilege conferred by grant from government and vested in individuals." Burrill's Law Dict., *Franchise.* "A particular privilege conferred by grant from a sovereign or government and vested in individuals." Webster's Dict. "A privilege or immunity of a public nature which cannot legally be exercised without legislative grant, would be a franchise." Ang. & Ames on Corp., §§ 4, 737. "If there are certain immunities and privileges in

which the public have an interest and which cannot be exercised without authority derived from the sovereign power, it would seem to me that such immunities and privileges must be franchises." *People* v. *Utica Ins. Co.*, 15 Johns., 387. Manifestly there was nothing whatever left of this corporation after the transfer was made. It is conceded that there was not enough left of it to enable it to receive this bequest and execute the trust. The second reason is that another corporation can not execute the trust. The beneficiaries are not named. They are not described so that they can be known. It is all uncertain who they are or who they may be. The testator left it wholly to this corporation to make the selection at its discretion. A case cannot be found in all the books where it has been held that one corporation can exercise the discretion confided to another. To sanction this would be an altering of the testator's will. *White* v. *Fisk*, 22 Conn., 31. The will must be carried out as it was made, if it is carried out at all. If the beneficiaries had been named in the will, or had been so described that it could be known who they were, and if the amount of property given them through a trustee had been definitely stated, so that the trustee would have no discretion in the matter, either in regard to the beneficiaries or the property they should have, then another trustee might be appointed to execute the trust. But it can never be done under this will without violating its terms.

We think the legacy given to the Pennsylvania corporation in trust has lapsed, and that the property so given must go to the heirs of the testator.

We advise the Superior Court to make a decree in conformity with the views herein expressed.

In this opinion the other judges concurred.