WALTER I. SUNDLUN *v.* THE NOANK SHIPBUILDING COMPANY, INC., ET AL.

MALTBIE, C. J., BROWN, JENNINGS, ELLS and DICKENSON, JS.

Argued April 9—decided June 17, 1948

*Richard F. Corkey,* for the appellant (defendant receiver).

*Abraham A. Lubchansky,* for the appellee (plaintiff).

DICKENSON, J. This action, to foreclose a chattel mortgage held by the plaintiff on property of the Noank Shipbuilding Company, Inc., was brought against Frank L. Winston, receiver of the corporation, in December, 1943. No defense was interposed, a judgment for foreclosure by sale was entered and the property was sold. Upon motion of creditors, the court reopened the judgment on March 1, 1944. On March 24, 1944, the parties stipulated that the proceeds of the sale be impounded with the clerk of the court until the validity of the plaintiff's mortgage was determined. On September 29, 1944, Richard F.

Corkey was appointed receiver of the corporation by the court and thereafter was substituted for Winston as the defendant receiver. The main defenses to the action were that the mortgage was not authorized, was not properly executed and is not a legal obligation of the corporation. Judgment was rendered for the plaintiff from which the defendant receiver has appealed. One of the claims of law of the defendant is that the contract for the chattel mortgage was in violation of the laws of the state of Rhode Island under which the corporation was incorporated and that the mortgage is therefore invalid and unenforceable. As our ruling on this claim is decisive of the case, we state only such facts found by the trial court or which the defendant is entitled to have made a part of the finding as relate to this claim.

The plaintiff is an attorney at law and has practiced law for about twenty-five years in the state of Rhode Island. He was engaged by Frank L. Winston to organize the Noank Shipbuilding Company. It was organized under the laws of Rhode Island in 1942 and operated a shipyard in Groton, Connecticut. The plaintiff was its attorney and rendered legal services to it until it went into receivership. Frank L. Winston was president and treasurer of the corporation and the plaintiff was secretary. Winston and the plaintiff were the directors. The entire management of the business was under Winston, who owned one half of the entire stock issue and held the other half, owned by Dr. Godfrey Nurse, as pledgee.

The corporation's by-laws expressly authorized the directors to vote to give a chattel mortgage for a good consideration, and vested in the president authority, among other acts, to negotiate and execute contracts, notes, mortgage deeds and all other legal instruments necessary to be signed or executed in connection with

the operation of its business. The by-laws further provided that the treasurer might execute such instruments in the name of the corporation as he should be "authorized by vote of the holders of common stock or of the Board of Directors." At the first meeting of the stockholders of the corporation, June 16, 1942, it was voted that the president and treasurer be expressly authorized, among other acts, to execute promissory notes to himself for money advanced to the corporation, and similarly to any other officer of it upon the same basis, and to give a chattel mortgage upon its property for a valuable consideration. On July 2, 1942, at a meeting of the directors, the president-treasurer was expressly authorized to give a chattel mortgage upon the property of the corporation to any officer of it for a valuable consideration. On September 9, 1942, the plaintiff loaned the defendant company $7500 by agreement with Winston that it would be repaid, and a bill for the plaintiff's legal services would be paid, within three weeks or the plaintiff would be given a chattel mortgage covering the total amount. At a directors' meeting held on the same day, it was voted to give the plaintiff such a mortgage. On September 22, 1942, the plaintiff rendered a bill for $2500 for services and on October 1, 1942, received the corporation's note for that sum.

The following minutes appear relative to a meeting of the directors held on May 11, 1943, at which the plaintiff and Winston were the directors present. "SPECIAL MEETING OF THE DIRECTORS—NOANK SHIP-BUILDING COMPANY, INC. A meeting was held on May 11, 1943, at 2 o'clock P.M. It was reported that Walter I. Sundlun has requested that he be given the chattel mortgage previously agreed upon. Upon motion it was unanimously voted that a chattel mortgage be executed and delivered to Walter I. Sundlun upon

such goods, fixtures, effects, equipment, machinery and articles of personal property belonging to this corporation and forming part of and used in connection with the shipbuilding business of this corporation which are authorized by law to be mortgaged and as described in said chattel mortgage which was presented and read at this meeting, for the sum of Ten Thousand Dollars ($10,000.) for the money and other valuable consideration paid and given by him to this corporation, and that the President and Treasurer of this corporation be and is hereby duly authorized to execute, sign and deliver such a chattel mortgage deed and a promissory note of even date and also any other paper or legal instrument which may be necessary to properly give said Walter I. Sundlun full and complete security for said loan of Ten Thousand Dollars ($10,000.). The aforegoing minutes were read to the meeting and on motion approved. The meeting then adjourned. Attest, s/ Walter I. Sundlun. Secretary." Shortly thereafter, the mortgage here in suit was given. The trial court found that Winston, the president and treasurer, was empowered by the by-laws and by the vote of the stockholders to execute the chattel mortgage and held that it was valid as against the defendant receiver, representing the creditors. The defendant claims that the only manner in which the plaintiff, as director, could contract with the corporation for the mortgage was in compliance with a specific provision of the General Corporation Law of Rhode Island and that he failed to show compliance with that provision.

The defendant corporation was organized under the provisions of the General Corporation Law of Rhode Island. These laws are its charter. It derives its powers from them and can exercise its powers only in the manner authorized by them, and when it goes into another state to do business it has the same powers and

is subject to the same limitations. *White* v. *Howard,* 38 Conn. 342, 361; *State ex rel. Eliott* v. *Lake Torpedo Boat Co.,* 90 Conn. 638, 642, 98 A. 580; 17 Fletcher, Corporations (Perm. Ed.), p. 97. General Laws of Rhode Island (1938), chapter 116, § 21, provides as follows: "Any corporation may contract for any lawful purpose with one or more of its directors or with any corporation having with it a common director or directors, if the contract is entered into in good faith and is approved or ratified by a majority vote at any meeting of its board of directors: *Provided,* that the contracting or common director or directors shall not vote on the question and shall not be counted in ascertaining whether or not a quorum is present for this purpose at the meeting. A contract made in compliance with the foregoing provisions shall be voidable by the corporation complying with said provisions only in case it would be voidable if made with a stranger." In *Matteson* v. *Wm. S. Sweet & Son, Inc.,* 58 R. I. 411, 193 A. 171, this statute was fully construed as to the provision relating to interlocking directors of separate corporations. The decision applies in principle to the provision of the statute concerning contracts between a corporation and its own directors. It was there held that the general assembly had definitely legislated on the matter (p. 415); that the provisions of the statute must be complied with to make a valid contract (p. 416); that no question of good faith was involved (p. 417); and that the burden was upon the one claiming on the contract to prove that the provisions of the statute had been met (p. 418).

The plaintiff cites authority in other jurisdictions which he claims supports a contrary doctrine. Decisions of the courts of other states, however, have no weight. The judgment of the Supreme Court of Rhode Island is conclusive as to the effect of its state's stat-

utes. *Converse* v. *Aetna National Bank,* 79 Conn. 163, 175, 64 A. 341; *Cristilly* v. *Warner,* 87 Conn. 461, 465, 88 A. 711; *Crum* v. *Bliss,* 47 Conn. 592, 599. The plaintiff contends that the statute was designed for the protection of stockholders and was not intended to apply to a situation where the action of the directors was authorized by the stockholders of the corporation or to one where directors loaned money to the corporation, citing *Gallogly* v. *Stender,* 51 R. I. 303, 154 A. 280. The *Matteson* case (p. 419) disposes of both claims. It was there stated in a similar situation that "under our construction of the statute, the contract . . . is at least voidable, if the provisions of the statute have not been complied with . . . and the receiver has elected to avoid it," and that the fact that the corporation may have received certain benefits from the transaction does not change this. The *Gallogly* case, moreover, involved a purchase of property of the corporation at a sale on foreclosure of a mortgage of its property, and the transaction did not fall within the terms of § 21 of chapter 116 of the Rhode Island statutes, as is apparent from the fact that the opinion in the *Matteson* case does not mention the *Gallogly* case.

While the trial court found that there were three directors of the corporation, Winston, Nurse and the plaintiff, reference to the minute book of the corporation discloses the election of but two, Winston and the plaintiff, as the defendant contends. The trial court also found that the plaintiff was a director "in name only." Article 4 of the corporation by-laws provides that the secretary shall have the right to be a director, and article 10 that he "shall have the right to fully participate and vote at all meetings of this Corporation." Article 10 further provides that he shall keep a record of all meetings of the stockholders and directors. By the record, attested by the plaintiff as secre-

tary, it appears that Winston and he were the sole directors of the corporation. We adopt this fact as a proper part of the finding, and the further fact that the plaintiff was fully authorized to act as a director.

There were two votes of the directors purporting to authorize the contract for a chattel mortgage, that of September 9, 1942, and that of May 11, 1943. The plaintiff contends that the earlier one was effective and the latter was superfluous. The defendant claims that the chattel mortgage was executed as a result of the vote of May 11, 1943, and that is the vote that the plaintiff must rely upon. The question is not material. Both records recite a unanimous vote of the directors and both are attested by the plaintiff as secretary. The only logical conclusion that the trial court could draw was that both Winston and the plaintiff were present and voted to grant the mortgage to the plaintiff. This was a direct violation of the Rhode Island statute and so was ineffective to authorize the execution and delivery of the chattel mortgage to the plaintiff.

There is error, the judgment is set aside, and the case is remanded with direction to enter judgment for the defendant.

In this opinion the other judges concurred.