128 A.2d 801 (1957)
William ELSTER and Ray Wolf, Plaintiffs
v.
AMERICAN AIRLINES, Inc., et al., Defendants.
Court of Chancery of Delaware, New Castle.
January 24, 1957.
*802 William E. Taylor, Jr., Wilmington, and William E. Haudek, of Pomerantz, Levy & Haudek, New York City, for plaintiffs.
Richard F. Corroon, of Berl, Potter & Anderson, Wilmington, and Debevoise, Plimpton & McLean, New York City, for defendant American Airlines, Inc.
*803 MARVEL, Vice Chancellor.
On August 26, 1952 William Elster filed his complaint against American Airlines, Inc., alleging that stock options granted and to be granted to a large number of executive and supervisory employees under a company plan were void. Plaintiff contended that such options as granted constituted gifts of corporate assets which had not been authorized by unanimous stockholder vote.
American's stockholders meeting on May 16, 1950 had approved by an overwhelming majority vote the issuance of options for 250,000 shares of American common stock to approximately twenty-five executives to be selected by a committee of directors, and on September 12, 1950 options with respect to 143,000 such shares were granted to thirty such corporate executives. At a meeting held on May 15, 1951 American's stockholders again by an overwhelming vote approved the allotment by committee of options for the remaining 107,000 shares "* * * among additional executive and supervisory personnel generally * * *"[1] and on May 29, 1952 options for such shares of stock were granted to two hundred and and eighty nine such employees. The complaint prayed for injunctive relief against the issuing and honoring of any options and for the cancellation of unissued options, however, no effort was made to obtain a preliminary injunction, and all unexercised options expired by their own terms on June 1, 1955.
Elster admittedly had not become a stockholder of American Airlines until June 1951 and so could not comply with the requirements of Rule 23(b), Del.C.Ann. insofar as his complaint attacked the 1950 options.[2] An effort was made to remedy this situation by adding Anne F. Cohen, a stockholder of longer standing, as a party plaintiff on March 1, 1953. It was conceded, however, on judicial disposal of American's motions to dismiss and for summary judgment that Mrs. Cohen had no standing to attack either set of options inasmuch as her shares had been voted in favor of the grant of options authorized at both meetings of stockholders. Summary judgment was then granted against Mrs. Cohen, and insofar as Elster's complaint attacked the 1950 options, it was dismissed.[3]
Thereafter on December 8, 1953 American answered and moved for judgment of dismissal for plaintiff's failure to name the optionees as parties defendant and for summary judgment on the grounds that consideration for the options had been found by the directors to be legally adequate pursuant to action taken under the provisions of § 157 of Title 8 Del.C.[4] On June 14, 1954 the motion to dismiss for failure to join the optionees as defendant parties was granted and decision was reserved on the motion for summary judgment, however, the then trial judge stated[5] that before an order of dismissal would be signed, plaintiff would be given "* * * an opportunity, should he so desire, to bring in some or all of the optionees as parties defendant."
There matters rested, except for the filing of interrogatories by the then plaintiff and the corporation's answers thereto, until on July 10, 1956 I entered an order[6] permitting *804 the filing of a second amended complaint which named the optionees as parties defendant and added as a party plaintiff, Ray Wolf, who claims to have been a stockholder of American since 1935. A sequestrator was appointed by order of the same date. On July 26, 1956 American moved to rescind the orders of July 10 contending that it was entitled to judgment under its pending motion of December 1953 on which the Court had reserved decision. American's motion also set forth as grounds for cancellation of the Court's order of July 10 the contentions that plaintiff's effort to amend and bring in new parties was made after the running of the bar of the three year Delaware statute of limitations,[7] and in the alternative, if such statute does not directly apply, that plaintiff's attempted amendment is barred by laches. On September 20, 1956 American completed its pleadings to date by filing an amended answer which incorporates all its defenses.
Two principal questions are accordingly before the Court: first, does plaintiff's latest amendment with its adding of additional parties come too late, and, if not, is the corporate defendant on the basis of the undisputed material facts entitled to summary judgment?
While the second amended complaint differs somewhat in form from the original complaint and seeks an accounting from the individual defendants, such altered form and the added prayer for an accounting are attributable to the adding of additional parties, the passage of time and shifts of position made since 1952 and not to any change in the basic theory of the case. The gravamen of the action remains unchanged in that it seeks a decree to the effect that employee stock options issued by the corporate defendant in 1951 and 1952 were granted without legal consideration. Accordingly, if it appears from the papers before me that the options when granted were in effect gifts of corporate assets or if proof as to the consideration furnished by the optionees in return for the grant of options is inconclusive, American's motion must be denied unless it appears that plaintiff's amendment was filed too late.
American Airlines Inc. contends that inasmuch as the options under attack were issued in 1951 and 1952 and expired on June 1, 1955, since which dates a substantial portion of the optioned stock has been sold by former optionees, plaintiff's present cause of action, while admittedly seeking rescission, is essentially one for damages against new parties and is therefore barred by the Delaware three year statute of limitations, § 8106, Title 10, Del. C., Rule 15(c) of this Court, Henis v. Compania Agricola de Guatemala, D.C.Del., 116 F.Supp. 223 and Messelt v. Security Storage Company, D.C.Del., 14 F.R.D. 507. The corporate defendant quite logically takes the position that if the amendment adding new parties is barred by the applicable Delaware statute of limitations, the suit must fail inasmuch as it is the law of this case that the presence in it of the individual defendants is a prerequisite to the affirmative relief sought.
I cannot agree, however, that the provisions of the Delaware three year statute of limitation[8] here operate directly to bar what I consider to be in essence an equitable suit for rescission. Admittedly damages may be the only relief available against many of the individual optionees if the corporate defendant is to be made "whole" *805 according to plaintiff's gift of corporate assets theory, but this aspect of the case is subsidiary to what now appears to be an equitable cause[9] of action. At this stage[10] of the proceedings it is impossible to determine which option holders have sold or otherwise effectively disposed of optioned stock. Furthermore, if the options are ultimately held to be invalid, stock issued pursuant thereto and held by persons other than innocent purchasers for value is presumably subject to cancellation.
It is well established that a statute of limitations need not be but usually is applied so as to bar an equitable action where there is an analogy between such an action and its counterpart at law, Perkins v. Cartmell's Administrator, 4 Har. 270, Bush v. Hillman Land Co., 22 Del.Ch. 374, 2 A.2d 133. Moreover, even if it were to be conceded that an action for damages is the appropriate remedy against those defendants who have disposed of optioned stock and that the statute of limitations might be pleaded by such persons, there is nothing in the present record to show when such causes of action for damages arose against such individual defendants. Accordingly, I decline to apply the strict bar of the three year statute of limitations in response to American's motion.
American also advances the defense of laches, an equitable defense based on the theory that a person with knowledge of an impending transaction should not be permitted to sit by in silence while positions are fundamentally changed by potential adversaries and the interests of third parties accrue. In short, laches is delay in bringing an equitable cause of action which a court of equity will not excuse. When established, laches is deemed to constitute either an implied waiver of a remedy or if not strictly waiver, conduct of a type which equity will deem a bar to the application of a remedy otherwise available. In applying laches, the Chancellor is not required to follow the analogous statute at law, but, as the equities require, may apply a period either shorter or longer than that fixed by statute, Scotton v. Wright, 13 Del.Ch. 214, 117 A. 131.
In cases involving the sale of corporate assets or their merger with those of another corporation, slight delay may in itself lead to the denying of a motion for injunctive relief where such an order would involve a complex undoing of an accomplished corporate act, Cottrell v. Pawcatuck Co., Del.Ch., 106 A.2d 709. Also where a corporate act involving changes in capital structure and a material alteration of rights attached to stock ownership has been consummated, an objecting stockholder with prior knowledge of such a contemplated act is charged with a duty both to the corporation and to its other stockholders to act with the promptness demanded by the particular circumstances, Federal United Corp. v. Havender, 24 Del.Ch. 318, 11 A.2d 331. Courts of equity do not look kindly on a plaintiff stockholder, who with personal profit in mind, deliberately remains passive when he should have acted promptly.
Again without passing on the question of whether or not the corporate defendant by motion may appropriately raise *806 laches for all parties defendant, I am of the opinion that on the present record such principle should not now be applied to vacate this Court's orders of July 10, 1956. I pass over consideration of the obvious advantages to the interested parties in putting off disposal of this case pending a ruling on the validity of a similar stock option plan the purpose of which had apparently been realized notwithstanding the absence of reasonable assurances that the granting corporation would receive the benefits bargained for. Furthermore, I shall not consider at the present time the question of whether or not plaintiff's delay of slightly over two years in joining parties, declared on June 14, 1954[11] to be indispensable to the relief sought, is inexcusable. I do this because, in my opinion, it is not possible to decide whether or not the factual situation surrounding plaintiff's inaction is such as to warrant the application of the equitable principle of laches until testimony has been taken. Did plaintiffs receive or should they have received such information about the option plan at its inception as to put them on notice and did they thereafter unreasonably delay? On the present record the pertinent facts concerning plaintiffs' knowledge have not been agreed upon,[12] nor have they been tried. In my opinion knowledge sufficient to constitute a waiver of the right of a stockholder to attack an alleged improper gift of corporate assets cannot be presumed on the present record. Furthermore, this is not the type of case in which an action is barred by laches because intricate corporate changes in capitalization or the like have taken place. Finally, I am not satisfied as of now that the optionees have so changed their position by stock sales and the like as to make the present action inequitable. Accordingly, the pending motion for rescission of this Court's orders of July 10, 1956 on the grounds of laches will be denied. Compare Bush v. Hillman Land Co., supra.
The corporate defendant has also moved for summary judgment contending that on the pleadings and on its uncontradicted affidavits it is entitled to judgment as a matter of law. The corporation argues that the background[13] of its option plan discloses a history of assurances to corporate personnel that an overall incentive option plan was in the making and that executives and other key employees presumably remained with American through the succeeding years in the hope of receiving stock options. It is also pointed out that there were substantial delays following the authorization of each set of options due to salary regulations imposed as a result of the war in Korea, delays which the individual defendants learned about from company publications and otherwise, and waited out to the benefit of the corporation. It is further argued that the grant of options after a long period of advance notice and publicity is analogous to a cash bonus made pursuant to a prior agreement. It is finally contended that § 157 of Title 8 Del.C. precludes judicial attack on stock options in the absence of fraud and that the 1953 resolution of the corporate directors as to consideration for the grant of the 1950 and 1951 options is conclusive.
As in the matter of the defense of laches, I am of the opinion that American's theories of antecedent consideration for the grant of the options in question cannot be decided short of trial assuming such theories can be established in the face of the fact that stockholder approval of the options *807 was obtained following distribution to stockholders of proxy material[14] which failed to mention past services as the legal consideration for the granting of options.
American finally contends that the 1950 agreements provided for exercise of an option by its original holder "* * * at any time or times up to and including June 1, 1955, if, at the time of such exercise, he is performing services for the Corporation; * * *"[15] and that the 1952 option grants provided for their exercise: "(a) By the Option Holder at any time up to and including June 1, 1955, if, at the time of such purchase he is an employee of the Company or its subsidiaries; * * *" Relying on this language, American takes the position that the options here under attack differ from those condemned in the case of Kerbs v. California Eastern Airway, 33 Del.Ch. 69, 90 A.2d 652, 34 A.L.R. 2d 839 because they were to be exercised while an option holder was employed and thus the options themselves insured the furnishing of some services in return for their grant.
In my opinion, however, the options here under attack, by their terms and under the presently disclosed facts and circumstances surrounding their grant appear to be subject to the same criticism found to be well taken in the Kerbs case. I find nothing in the opinion of the Supreme Court in Gottlieb v. Heyden Chemical Corp., 33 Del.Ch. 177, 91 A.2d 57 at odds with the basic holding of the Kerbs case.
Insofar as the corporate resolution adopted under § 157 of Title 8 Del.C. is concerned, the critical question remains that of whether or not consideration for the options existed as of the time they were granted, Frankel v. Donovan, Del.Ch., 120 A.2d 311. The corporate defendant's motion for summary judgment is denied.
Order on notice.
NOTES
[1] Proxy statement for May 15, 1951 annual meeting of stockholders.
[2] The 1951 options were granted on May 29, 1952.
[3] Del.Ch., 100 A.2d 219.
[4] This section as amended on July 8, 1953 provides inter alia "* * * In the absence of actual fraud in the transaction, the judgment of the directors as to the consideration for the issuance of such rights or options and the sufficiency thereof shall be conclusive * * *."
[5] Del.Ch., 106 A.2d 202, at page 204.
[6] This order and the order of sequestration were entered without notice to American Airlines Inc. because I was satisfied that notice would tend to defeat the purpose of the proposed amendment in that former option holders named as additional defendants in the amended complaint might avoid appearance in Delaware by prompt disposal of their stock. I also was and am of the opinion that there is no real prejudice caused the new defendants by the order inasmuch as the sequestration order is flexible. Furthermore, all defenses to the amended cause of action may be raised in orderly fashion by appropriate pleadings and proof on the part of the individual defendants.
[7] § 8106, Title 10 Del.C.
[8] This section, § 8106 of Title 10 Del.C., provides inter alia "* * * no action to recover damages caused by an injury unaccompanied with force or resulting indirectly from the act of the defendant shall be brought after the expiration of 3 years from the accruing of the cause of such action * * *."
[9] Because the conclusions reached in this opinion will tend to compel the appearance of some or all of the optionees who on appearance may appropriately plead the defenses here sought to be made by motion, I am not passing on the question of the authority of counsel for a corporate defendant in a derivative suit to appear for individual defendants for the purpose of motions such as the ones here pending.
[10] By stipulation the filing of the sequestrator's report was postponed and was not filed until January 9, 1957. It discloses certain transfers to joint owners but, of course, does not disclose which ones of the individual defendants who have transferred full title to optioned stock remain the beneficial owners thereof.
[11] 106 A.2d 202.
[12] Insofar as the plaintiff, Cohen, was concerned, it was conceded that her shares had been voted for the options. This has not been conceded as to the plaintiff, Wolf, who incidentally is not a registered stockholder.
[13] It contends that such plan had its inception in 1945 when 250,000 shares of corporate stock were made available to American's then president on options which he and his assignees apparently allowed to expire.
[14] The 1950 proxy statement states that the experience of the board since 1945 had served to confirm its opinion that "* * * the issuance of stock options * * * furnishes added incentives and inducements to key personnel that greatly benefit the corporation * * *" and the 1950 option agreements state inter alia: "D

The Corporation, recognizing the value to it of the continuance of the services of the Option Holder as an employee, is desirous of furnishing him with added inducements and incentives to continue in the employ of the Corporation and is desirous of developing in him a proprietary attitude toward the Corporation, * *"
The 1951 proxy statement reads in part:
"As stated at the time the option plan was submitted to stockholders for approval, the Board of Directors is of the opinion that the consideration received by the corporation for the options as a result of the added inducement to key personnel to whom the options are granted to continue in the employ of the corporation and its subsidiaries and to advance the interests thereof is of substantial benefit to the corporation and said subsidiaries * * *"
[15] The 1950 agreements also provided for exercise of an option by a holder "* * if at the time of such exercise he is a member of the Armed Forces of the United States or he is employed in a period of national emergency, by the Government of the United States or any duly authorized agency thereof * * *" or "* * * at any time or times up to an including June 1, 1955, if, in the judgment of the Board of Directors of the Corporation, such exercise is in the interests of the Corporation."