CARLOS B. ELLIS, EXECUTOR (ESTATE OF JOSEPH ADAM) *v.* EMHART MANUFACTURING COMPANY

KING, MURPHY, SHEA, ALCORN and COVELLO, Js.

502

Argued March 5—decided May 9, 1963

*Samuel N. Allen,* for the plaintiff.

*Bruce W. Manternach,* with whom was *Elliott C. Miller,* for the defendant.

SHEA, J.   The plaintiff brought this action to recover damages for breach of a contract, alleged to have been caused by the defendant's refusal to issue and deliver certain shares of its stock which were included in an option to purchase granted by the defendant to the plaintiff's decedent.   After the pleadings were closed, the parties united in requesting the trial court to reserve the action for the advice of this court.

The parties filed a stipulation as to the facts. The defendant is a Delaware corporation having an office and place of business in the city of Hartford.   In June, 1959, the defendant's directors approved a restricted stock option plan, hereinafter called plan B, which granted to executive and managerial employees an option to purchase stock in the company.   The purpose of the plan was to

encourage certain valued employees of the defendant to remain in its employ by stimulating in them a personal and active interest in the development and success of the company in the manner contemplated by § 421 of the United States Internal Revenue Code of 1954. On April 29, 1960, the defendant, pursuant and subject to all of the provisions of plan B, granted to the plaintiff's decedent, Joseph Adam, an option to purchase 265 shares of the defendant's stock at $41.76 per share. Adam, a resident of Meriden, died on July 17, 1960. At the time of his death, he had not exercised his option to purchase the stock. On August 30, 1960, the plaintiff, as executor, mailed to the defendant at its Hartford office two separate notices exercising the option to purchase 53 shares and 212 shares at the option price of $41.76 per share. The notices were duly executed as provided in plan B. Prior to August 30, 1960, the plaintiff knew that some of the officers of the defendant were of the opinion that his right to exercise the option was limited to 53 shares of stock. The defendant issued to the plaintiff its certificate to cover 53 shares of stock but returned to the plaintiff the certified check which he had tendered in payment for the 212 shares. On October 21, 1960, the defendant's board of directors, at a regular meeting, interpreted plan B as giving the plaintiff the right to exercise the option to purchase only to the extent that Adam might have exercised it on the date of his death. This interpretation by the directors would limit the rights of the plaintiff as executor to the purchase of the 53 shares for which stock was issued to him. If the plaintiff had the right to exercise the option for the full number of shares, that is, 265 shares, he exercised that right on August 30, 1960. The sec-

tions of plan B which are pertinent to the decision are printed below.[1]

On these stipulated facts, the advice of this court is requested on the following questions: (a) Is the interpretation of plan B made by the defendant's board of directors at its meeting on October 21, 1960, binding on the plaintiff? (b) Did the plaintiff, under the provisions of plan B and the option, have a right on August 30, 1960, to purchase from the defendant 265 shares of the defendant's common

---

[1] "[PLAN B] . . . 2. PURPOSES The purposes of this stock option plan (hereinafter referred to as 'Plan B') are to encourage the sense of proprietorship on the part of those responsible for the continued growth of the Company, and to stimulate a personal and active interest in its broader development and greater financial success in the manner contemplated by Section 421 of the Federal Internal Revenue Code. . . . 6. PERIOD OF OPTION Options shall be granted for a period of five (5) years from the date of the option, subject to the provisions for termination in Paragraph 10 hereof. 7. WHEN OPTION MAY BE EXERCISED While service is being rendered to the Company options shall be exercised, in installments, during each twelve (12) months from and after the date of option at a rate not in excess of 20% per year of the total number of optioned shares, provided, further, that any balance of the said 20% installments remaining unpurchased in any twelve (12) months period may be purchased during a later twelve (12) months period within the period of the option. . . . 9. NONTRANSFERABILITY OF OPTION Options are not transferable otherwise than by will or by the laws of descent and distribution, and during the lifetime of the optionee are exercisable only by the optionee. 10. TERMINATION OF OPTIONS Options, to the extent not exercised, shall terminate five (5) years from the effective date of the option, or upon termination of the optionee's active employment by the Company, whichever date shall first occur, provided, however, that the option may be exercised by the optionee's executors, administrators, heirs, or legatees within one (1) year from the date of the optionee's death if death shall occur during his employment. . . . 13. AMENDMENT OF PLAN B The Board of Directors shall have the right to amend, suspend, or terminate Plan B at any time, provided, however, that no such action shall affect or in any way impair the rights of an optionee under any option theretofore granted under Plan B. The Board of Directors' interpretation of the terms and provisions thereof shall be final, binding and conclusive."

capital stock at the option price of $41.76 per share?
(c) What is the measure of the damages, if any,
which the plaintiff is entitled to recover from the
defendant?

The first question requires a determination of the
legal effect of the concluding sentence of paragraph
13 of plan B, providing that "[t]he Board of Direc-
tors' interpretation of the terms and provisions
thereof shall be final, binding and conclusive." The
defendant, relying on this provision, claims that the
interpretation of the plan made by the board of di-
rectors on October 21, 1960, is final, binding and
conclusive on the plaintiff and that therefore he is
precluded from purchasing, under the option, stock
in excess of the amount which Adam could have
purchased at the time of his death. On the other
hand, the plaintiff contends that the plan expressly
provides that the option may be exercised by the
legal representatives of the estate of the optionee
within one year of the date of the optionee's death
if death shall occur during his employment and that
the plaintiff is not bound by any interpretation of
the terms which is in conflict with the language of
the plan.

The issuance of the option to Adam in exchange
for a valid consideration constituted a contract be-
tween him and the defendant. *Dolak* v. *Sullivan*,
145 Conn. 497, 504, 144 A.2d 312; *Beard* v. *Elster*,
160 A.2d 731, 737 (Del.). Adam gave consideration
for the contract by his continued employment with
the company. *Tilbert* v. *Eagle Lock Co.*, 116 Conn.
357, 362, 165 A. 205; *Kerbs* v. *California Eastern
Airways, Inc.*, 33 Del. Ch. 69, 74, 90 A.2d 652. It
is a well-recognized principle of natural justice that
a man ought not to be a judge in his own case.
Irrespective of any proof of bias or prejudice, the

law presumes that a party to a dispute is not disinterested and does not possess the impartiality so essential to proper judicial action regarding it. This absolute disqualification to act rests on sound public policy. Any other rule is repugnant to a proper sense of justice. *Matter of Cross & Brown Co. (Nelson)*, 4 A.D.2d 501, 502, 167 N.Y.S.2d 573; *Patton* v. *Babson's Statistical Organization, Inc.*, 259 Mass. 424, 428, 156 N.E. 534. The courts are always open for the redress of injury done to person or property. To permit parties to agree before a dispute arises to submit their differences to the adjudication of one of the parties to the agreement is against public policy. *Wallace* v. *Brotherhood of Locomotive Firemen & Enginemen*, 230 Iowa 1127, 1133, 300 N.W. 322. "It certainly cannot be lawful for one party to a contract, even by express terms thereof, to provide, in advance of any controversy growing out of the contract, that his judgment of the law regarding any question which may arise shall preclude the other party to the contract from contesting the same in a court of law or equity." *Long* v. *Chronicle Publishing Co.*, 68 Cal. App. 171, 181, 228 P. 873. Where a corporate employer declares a plan to be within the absolute discretion of the directors, the court nevertheless will interpret the plan so as to give effect to its general purposes, and the employer cannot defeat the employees' reasonable expectations of receiving the promised reward. *Bird* v. *Connecticut Power Co.*, 144 Conn. 456, 463, 133 A.2d 894, and cases cited. In the present case, the option given to Adam constituted a contract under the terms of which the optionee and his legal representative acquired certain vested rights in exchange for the benefits which the optionee continued to confer on the de-

fendant until the time of his death. Any attempt by the board of directors to interpret the plan so as to alter or impair rights already acquired under the contract would not be binding on the plaintiff.

The defendant contends that a proper interpretation of the contract bars a recovery by the plaintiff in this action and that its interpretation is reinforced by the purposes and objects of the plan. The options are nontransferable except by will or by the laws of descent and distribution and, during the lifetime of the optionee, are exercisable only by the optionee. The rights of the plaintiff as the legal representative of the decedent's estate are contained in paragraph 10. His right to exercise the option under this paragraph is limited only as to the time of its exercise and the added requirement that death shall occur during the optionee's employment. There is nothing restricting the rights of an executor to any fraction, instalment or part of the option not already exercised. To adopt the construction of this paragraph urged by the defendant would require us to import language which cannot be found in the plan. The case differs from those where, by express provision in case of the death of the optionee, his legal representatives are given the right to exercise the option with respect to any shares the optionee could have purchased on the date of his death. See, for example, cases such as *Gottlieb* v. *Heyden Chemical Corporation,* 33 Del. Ch. 82, 84, 90 A.2d 660. Had the defendant intended to limit the rights of decedents' legal representatives, language similar to that used in the *Gottlieb* case would readily have accomplished the result. Without language like that or of similar import, the right of the plaintiff is not limited, and he is entitled to exercise the option to purchase any

stock on which the right has not already been exercised. The language used in paragraph 10 of plan B more nearly conforms to that which is found in cases such as *Beard* v. *Elster,* 160 A.2d 731, 733 (Del.), where the right of the legal representatives of the deceased option holder is limited only to the requirement that the optionee, at the time of his death, was performing service for the corporation. We hold that the plaintiff had a right to exercise any portion of the option which was unexercised at the time of the optionee's death.

The defendant's final argument is that a recovery by the plaintiff might result in an illegal gift of corporate property. This claim has no merit. The defendant is a Delaware corporation, and its corporate powers are controlled by Delaware law. *Sundlun* v. *Noank Shipbuilding Co.,* 135 Conn. 108, 112, 61 A.2d 665. The issuance of stock option plans by the defendant involves its internal affairs, and any controversy resulting therefrom is controlled by Delaware law. *Rogers* v. *Guaranty Trust Co.,* 288 U.S. 123, 129, 53 S. Ct. 295, 77 L. Ed. 652; *Beard* v. *Elster,* supra, 735. The validity of a stock option plan such as the one involved here depends directly on the existence of consideration to the corporation and the inclusion in the plan of conditions, or the existence of circumstances, from which the corporation may reasonably expect to receive the contemplated benefit from the grant of the options. *Beard* v. *Elster,* supra, 737; *Kerbs* v. *California Eastern Airways, Inc.,* 33 Del. Ch. 69, 74, 90 A.2d 652. In the absence of such consideration, the options would constitute an illegal gift of corporate assets. *Frankel* v. *Donovan,* 35 Del. Ch. 433, 437, 120 A.2d 311; *Kerbs* v. *California Eastern Airways, Inc.,* supra. The Delaware courts are concerned with

the existence of consideration as of the time the options were granted. *Elster* v. *American Airlines, Inc.,* 36 Del. Ch. 213, 222, 128 A.2d 801; *Frankel* v. *Donovan,* supra, 440. The provisions in plan B restricting the optionee from exercising any more than 20 percent of the option in any twelve-month period while service is being rendered and terminating his rights on termination of active employment reasonably ensure that the contemplated consideration will pass to the corporation. The existence of a proper consideration is all that is necessary, and the requirement is satisfied in the case before us. *Beard* v. *Elster,* supra.

The final question in the reservation relates to the measure of damages recoverable by the plaintiff if he had the right to purchase all the shares mentioned in the option. From their briefs, it is clear that the parties are in agreement as to the rule of damages which should be applied except as to the date on which the market value of the stock should be computed. This date should be determined under paragraph 8 of plan B, which provides that the optionee, in exercising his option, shall specify the number of shares to be purchased and the date of purchase, which is to be not less than five and not more than ten days following the date of notice. The stipulation submitted by the parties does not contain information concerning the date of purchase, although the parties have stipulated that if the plaintiff had the right to exercise the option to purchase all the shares, he fully exercised that right on August 30, 1960. In exercising the option, the plaintiff apparently failed to specify the date of purchase in the manner required by paragraph 8 of plan B. Consequently, there appears to be some inconsistency between the stipulation and the

instrument by which the plaintiff actually exercised the option. In view of this inconsistency, we have decided not to answer the last question.

To question (a) in the reservation, we answer "No"; to question (b), we answer "Yes"; we decline to answer question (c).

No costs will be taxed in this court in favor of either party.

In this opinion the other judges concurred.