**H. Dodge FREEMAN, Plaintiff-Appellant,**

**v.**

**COPPER RANGE COMPANY, Defendant-Appellee.**

**No. 11974.**

United States Court of Appeals
Seventh Circuit.

Sept. 20, 1957.

Max Swiren, Chicago, Ill., Martin S. Appel, Chicago, Ill., of counsel, for plaintiff-appellant.

Thomas R. Mulroy, Chicago, Ill., James P. Lynch, Jr., Boston, Mass., C. Ives Waldo, Jr., George Kelm, and Hopkins, Sutter, Owen, Mulroy & Wentz, Chicago, Ill., of counsel, for appellee.

Before MAJOR, LINDLEY and HASTINGS, Circuit Judges.

MAJOR, Circuit Judge.

This appeal is from a judgment entered January 18, 1957, favorable to defendant, upon its motion to dismiss the complaint for failure to state a cause of action upon which relief could be granted. Damages were sought because of defendant's refusal to sell and deliver its shares of stock to plaintiff as was provided, so it was alleged, in a Restricted Stock Option Agreement (hereinafter referred to as the Option Agreement), entered into between the parties February 3, 1955. The controversy here, as it did in the court below, relates to the rights and obligations of the parties as fixed by that agreement.

Plaintiff was employed by defendant June 1, 1954, as Vice President and Assistant General Manager of White Pine Copper Co., a subsidiary of defendant. On July 1, 1955 (about five months after the date of the Option Agreement), plaintiff was promoted to Vice President and General Manager. The employment of plaintiff was terminated by action of defendant March 23, 1956.

The purpose of the Option Agreement was to enable an employee to purchase and own shares of stock in the company, and to provide an added incentive for a continuation of service with the company. It will be necessary to make reference only to such portions of the Option Agreement as are material to the issues in controversy.

Paragraph 1 provides: "Upon the terms and subject to the conditions hereof, the Company hereby grants to the Employee an option to purchase a total of twelve hundred fifty (1,250) shares of common stock of the Company at $52.75 per share * * *. This option may not be exercised prior to March 1, 1957, nor after ten years from the date hereof except as provided in paragraph 8 hereof. * * * This option is granted in accordance with the Company's Restricted Stock Option Plan (the 'Plan') approved by the Board of Directors of the Company on February 3, 1953, set forth in the proxy statement dated April 20, 1953. * * * The Plan is hereby made a part of this agreement."

Paragraph 2 provides: " * * * the Employee [plaintiff] agrees to continue in the employ of the Company * * * for a period of at least two years from the date hereof, at the pleasure of the Company * * *."

Paragraph 8 (referred to in paragraph 1) is entitled "Termination of Option Prior to End of Ten-Year Period," and in material part provides: "This option shall terminate with respect to shares of stock for which there has been no proper exercise of the option upon the Employee's ceasing to be employed by the Company * * * unless the Employee's employment ceases by the action of the Company * * *, in any of which events the shares which the Employee was entitled to purchase at the time he ceased to be employed may be purchased as follows: (i) if the Employee's employment ceased * * * by action of the Company * * * the shares may be purchased only by the Employee, if living, and only within three months after the Employee ceased to be employed * * *."

The Option Agreement subsequently provides for the appointment by the Board of Directors of a committee of three Company Directors to administer the Plan. This committee, subject to the express provisions of the Plan, is granted full and final authority to interpret the Plan and the Option Agreement.

At the expense of repetition, it appears desirable to bring into close proximity dates of material importance: June 1, 1954, plaintiff was employed by defendant; February 3, 1955, the Option Agreement was entered into, which provided that it could not be exercised prior to March 1, 1957, nor later than ten years from its date (except as provided in paragraph 8); March 23, 1956, plaintiff's employment was terminated by action of the defendant, as it had a right to do by the terms of the Option Agreement. On May 25, 1956 (within three months after he ceased to be employed), plaintiff notified defendant of his desire to exercise the option. Upon defendant's refusal, there followed the instant action.

Much is said concerning the Plan adopted by defendant's Board of Directors April 20, 1953 (made a part of the Option Agreement by reference), which authorizes such Directors to enter into Option Agreements. We think we need not set forth in detail the provisions of the Plan for the reason that there is nothing inconsistent between its provisions and those of the Option Agreement. Section 6(d) of the Plan is couched in language almost identical to that contained in paragraph 8 of the Option Agreement. Section 6(c) is important and provides: "Each option shall be made exercisable at such time or times, whether or not in installments, as the Committee shall determine, but not within one year after its grant. Except as provided in subsection 6(d) below, the term of each option shall not exceed ten years."

It is essential to note that by this provision the committee was expressly enjoined from making an Option Agreement exercisable "within one year after its grant." Thus, the committee had the authority to determine February 3, 1955, one year after the execution of the Option Agreement, as the earliest date it could be exercised. Instead, the committee, as it had the right and authority to do, determined March 1, 1957 as the earliest exercisable date.

Plaintiff presses with vigor the argument that the limitation period contained in paragraph 1 is not pertinent to paragraph 8, and that because the latter specifies a limitation period of three months, plaintiff was entitled to exercise the Option Agreement within three months after the date of his discharge. The argument is fallacious. Paragraph 8 created no new right in the plaintiff other than to provide a three month period for the exercise of a right which was in existence at the time of his discharge. More specifically, any right which plaintiff had to purchase shares under paragraph 8 was by express language made dependent upon his right "to purchase at the time he ceased to be employed." In the absence of such right the Option Agreement was terminated upon plaintiff's discharge. It appears obvious that he had no right to exercise his option by purchase of stock on March 23, 1956, the date of his discharge. That right did not and could not have accrued earlier than March 1, 1957. The argument that plaintiff had a right to exercise the option within three months after March 23, 1956, the date of his discharge, if accepted, would place him in a position more advantageous than had he remained as an employee of the Company. It is plain that no such result was contemplated.

In view of the intendment of the parties, as clearly embodied in their written agreement, we find no occasion for analysis or discussion of the numerous cases relied upon relative to rules of construction, or for consideration of extrinsic facts for the purpose of ascertaining the meaning of the agreement. Also, our analysis of the situation obviates the necessity of discussing other contentions advanced by plaintiff.

Plaintiff argues that the judgment is harsh and inequitable. If such be the case, it is the result of the agreement entered into by him voluntarily and with his eyes open, so far as we are aware. By the terms of the agreement, defendant had a right to discharge plaintiff at its pleasure, for good reason or no rea-

son. It is neither logical nor reasonable to think that defendant by the exercise of that right conferred upon plaintiff something that otherwise did not exist, that is, the right to purchase stock prior to the earliest date provided by the Option Agreement, which date was determined by the committee under authority conferred by the Plan.

The judgment is

Affirmed.