**Isidor H. LUTZKER, Plaintiff,**

*v.*

**WALTER E. HELLER & COMPANY, (Inc)., Defendant.**

United States District Court
S. D. New York.
March 31, 1959.

Edward Elman, New York City, Leonard S. Elman, New York City, of counsel, for plaintiff.

Melvin Lloyd Robbins, New York City, Herbert E. Ruben, New York City, of counsel, for defendant.

SUGARMAN, District Judge.

Defendant Walter E. Heller & Company (Inc.) moves for an order dismissing the complaint of Isidor H. Lutzker. Matters outside the pleading were presented and not excluded by the court; the motion is therefore deemed one for summary judgment. F.R.Civ.P. 12(b), 28 U.S.C.A.

The complaint herein seeks specific performance of a contract dated June 23,

1955, between the parties to this action, wherein plaintiff, then an employee of the defendant, was given a restricted stock option to purchase shares of the defendant.

The following facts are not in dispute. Defendant is a Delaware corporation whose stock is publicly held and listed on the New York Stock Exchange and on the Midwest Stock Exchange. Plaintiff is an attorney at law, admitted to practice in New York in 1925. After acting as general counsel to defendant for some years, plaintiff in 1947 became a vice president of defendant. In 1953 he was appointed a member of defendant's then newly formed Executive Committee of the Board of Directors. Plaintiff never had a written employment contract with the defendant.

On June 23, 1955, defendant's Board of Directors met. The minutes of this special meeting show that:

"The Chairman stated that, in view of the importance of the Company's retaining the services of various officers and key employees, he had had under consideration for some time and had discussed with other members of the Board individually, and with counsel, a program further to encourage stock ownership in the Company by such officers and key employees, by means of restricted stock options as contemplated by Section 421 of the Internal Revenue Code [26 U.S.C.A. § 421]."

"The Chairman submitted to the meeting a form of restricted stock option, which was examined by the Directors present at the meeting. The Chairman pointed out that the option price, in order fully to qualify gain in the event of disposition for long term capital gain treatment, must be not less than 95% of the fair market value of the shares, or 110 per cent of the fair market value of the shares in the case of officers or employees owning stock possessing 10 per cent or more of the com-

bined voting power of all classes of stock of the Company. He also noted that transactions in the Company's common stock on this day on the American Stock Exchange closed at $32.75 per share. He further pointed ed out that, in order to encourage continued service to the Company, the form of option submitted to the meeting provides that the optionee can exercise his option only after six months and only as to 20 per cent of the stock subject to the option in each year for five years, and that the option is exercisable only while the optionee is employed by the Company, or within three months after the termination of his employment.

"After discussion of the proposed restricted stock options and of the employees to whom such options might be granted and the number of shares to be granted to each, the following resolutions were proposed and, upon motion duly made, seconded and carried, were adopted:

"Resolved, that as an incentive and to encourage stock ownership in this corporation by various of its officers and key employees in the manner contemplated by Section 421 of the Internal Revenue Code, there are hereby reserved for issuance pursuant to restricted stock options, as hereinafter specified, 50,000 of the authorized and unissued shares of the common stock, $2.00 par value, of this corporation.

"Resolved Further, that this corporation grant restricted stock options in substantially the form submitted to this meeting to the following named officers and employees of the corporation for the purchase of the number of shares of common stock, $2,00 par value, of the corporation set opposite their respective names, at a price of $31.12 per share, except that, in the case of any such officer or employee owning stock possessing 10 per cent or more of the combined voting power of all classes

of stock of the corporation the price shall be $36.03 per share:

"Name    Number of Shares

. . .              . . .

"Isidor H. Lutzker    3,850"

1.    "Restricted Stock Option

"Walter E. Heller & Company, a Delaware corporation (herein called the 'Company'), in consideration of $1.00 paid to the Company by Isidor H. Lutzker (herein called 'Employee') and in connection with his employment by the Company as an incentive to Employee and to encourage stock ownership in the Company by Employee, as contemplated by Section 421 of the Internal Revenue Code, hereby grants to Employee an Option to purchase stock of the Company, upon the following terms and conditions:

"1.    Upon acceptance of the terms and conditions hereof within 30 days from the date hereof, Employee shall have an Option to purchase a total of 3850 shares of $2 par value Common Stock of Walter E. Heller & Company (herein called 'Shares') after 6 months from the date hereof and within 5 years from the date hereof; provided, that Employee may purchase not more than one-fifth of said Shares at any time after 6 months and before one year from the date hereof, Employee may purchase not more than two-fifths of said Shares at any time after one year and before two years from the date hereof, Employee may purchase not more than three-fifths of said Shares at any time after two years and before three years from the date hereof, Employee may purchase not more than four-fifths of said Shares at any time after three years and before four years from the date hereof, and Employee may purchase all of said Shares not theretofore purchased by Employee at any time after four years from the date hereof and before five years from the date hereof.

"In case the Company shall, while this Option remains in force, change as a whole, by subdivision or consolidation in any manner or by the payment of a stock dividend, the number of shares of Common stock then outstanding into a different number of shares, with or without par value, then thereafter the number of shares of Common stock of the Company which Employee shall be entitled to purchase hereunder shall be increased or decreased, as the case may be, in direct proportion to the increase or decrease in the number of shares of Common stock of the Company by reason of such change,

Plaintiff approved and consented to these minutes and signed them sometime after July 20, 1955.

At or about that time he executed an option agreement [1] whereby he acquired and the purchase price hereunder per share of such Common stock after such change shall in case of an increase in the number of shares be proportionately reduced, and in case of a decrease in the number of shares be proportionately increased.

"2.    The purchase price of each Share purchased by Employee pursuant to the Option herein granted shall be $31.12 per share, being 95% of the fair market value of a Share on the date hereof.

"3.    Employee shall deposit with the Company the sum of $1.00 for each Share subject to purchase by Employee, payable as follows: one-fifth of said sum upon acceptance hereof, one-fifth of said sum within one year from the date hereof, one-fifth of said sum within two years from the date hereof, one-fifth of said sum within three years from the date hereof, and one-fifth of said sum within four years from the date hereof. Such deposit may be made in cash or in securities of the Company (valued at the market price thereof at the time deposited) or in U. S. Government bonds (valued at par). If Employee shall fail to make any such deposit within the respective periods hereinabove specified (or within 60 days after the expiration of any such period), this Option shall terminate as to all shares in excess of a number equal to the number of dollars (in cash or in securities valued as aforesaid) previously deposited by Employee. Any sums so deposited by Employee in cash shall be applied by the Company to the purchase price of Shares purchased hereunder at the rate of $1.00 per share purchased, when and if Employee exercises the Option herein granted to purchase such Shares, but if Employee fails to exercise the Option to purchase any portion of the Shares, the deposit in respect of such Shares shall be refunded to the Employee by the Company, plus interest on any cash amount refunded at the rate of 3% per annum from the date when such deposit was made, upon the expiration of the Option, or upon written notice to the Company from Employee that he will not purchase such Shares, whichever shall be earlier. Any sums so deposited by Employee in securities shall be returned to Employee in the form in which deposited when, and if, Employee exercises the Option herein granted to purchase the Shares in respect of

the restricted right to purchase 3,850 shares of defendant over a five-year period.[2]

The instant controversy arises from the parties' inability to agree on the con-

struction properly to be given to the option agreement above mentioned.

A construction is required because within five years from the grant to plaintiff of his rights under the option agree-

which such deposit was made, or upon the expiration of the Option or upon written notice to the Company from Employee that he will not purchase such Shares, whichever is earlier.

"4. This Option shall be exercised in respect of any Shares by written notice from Employee to the Company that Employee will purchase such Shares, not more than 10 nor less than 5 days be-before the date of purchase, and the payment in cash on or before such date by Employee to the Company of the full purchase price, less the applicable deposit.

"5. The Company agrees to reserve for issuance sufficient Shares subject to the Option herein granted and upon payment for any such Shares in accordance with the provisions hereof to issue and deliver the same to Employee, fully paid and non-assessable.

"6. This Option shall not be transferable by Employee in any way during his lifetime, and if Employee shall sell, assign or transfer the Option herein granted during his lifetime, then said Option shall thereafter be void and of no effect. In the event of the death of Employee before the expiration of the term of this Option, the personal representatives, heirs or legatees of Employee shall be entitled, at any time within 9 months after Employee's death and without prior deposit, to exercise this Option to purchase all or any part of the Shares subject to this Option, less the number of such Shares purchased by Employee during his lifetime and less the number of such Shares as to which this Option shall have terminated as provided in paragraph 3 hereof. The personal representatives, heirs or legatees of Employee shall succeed to all of the rights of Employee as to the application of deposits to the purchase price and the refund of deposits.

"7. The Option herein granted shall be deemed to be void and of no force and effect if, on the date hereof, Employee owns more than 10% of the total combined voting power of all classes of stock of the Company and its subsidiary corporations, and the acceptance of the Option herein granted by Employee shall be deemed to be a warranty by Employee that he did not own more than 10% of the total combined voting power of all

classes of stock of the company and its subsidiary corporations on the date hereof.

"8. The option herein granted shall only be exercised while Employee is employed by the Company or by any corporation which is a parent or subsidiary of the Company or within 3 months after the termination of such employment otherwise than through death, in which case the provisions of paragraph 6 above shall govern, or otherwise than through retirement or permanent and total disability, as those terms are defined in the Profit Sharing Plan of the Company, in which case employment shall not be deemed to have terminated for the purpose of exercising the Option herein granted.

"9. The Option herein granted is subject to the approval of the stockholders of the Company, and shall not be deemed effective unless such approval is received from such stockholders.

"In Witness Whereof, the Company has caused this instrument to be executed by its President and its corporate seal to be hereunto affixed by its Secretary, this 23rd day of June, 1955.
          "Walter E. Heller & Company
          "By   Lawrence A. Petersen
                       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                         Vice President
"Attest:
"R. H. Olson
          ‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                Secretary

"I hereby accept all the terms and conditions of the foregoing Option, without obligation to exercise the same, and I herewith deposit the sum of $770.00   , represented by 21 Shares W E H & Co. Common Stock   , pursuant to the terms of paragraph 3 thereof, this 20th day of   July,   1955   .
                    "Isidor H. Lutzker

"Receipt of the above described deposit is hereby acknowledged.
          "Walter E. Heller & Company
          "By   Lawrence A. Petersen
                       ‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾‾
                         Treasurer"

2. On August 23, 1955, the stock of defendant was split two for one and the par value was reduced from $2 to $1 per share. This contingency was anticipated by the second section of paragraph 1 of the agreement.

ment, i. e., in February, 1957, effective March 31, 1957, he resigned from office at defendant's request.

Plaintiff had on deposit with the company 150 shares of defendant's common stock to satisfy the requirements of paragraph 3. These shares were retained by the company until after plaintiff left its employ and were at all times here pertinent greater in value than the sum necessary as a deposit toward all the shares reserved in plaintiff's name; 21 shares being valued at sufficient to cover each $770 deposit.

On termination of plaintiff's employment as of March 31, 1957, and within two years of the grant of this option, he took the position that paragraph 8 of the agreement gave him the right to purchase at once all of the shares originally reserved in his name. He made due and timely demand for what he conceived were his rights.

The defendant took the position that it was bound by the agreement merely to keep open an offer to sell to plaintiff the shares reserved for him subject to the condition that he could purchase the shares at the maximum rate of one-fifth of the total (770 shares) in each of five successive years and only during his employment by defendant.

■ A fair reading of the option agreement shows that plaintiff's construction of the contract is unsound. On June 23, 1955, the writing was a mere offer to plaintiff by defendant to stand bound if within 30 days therefrom he accepted the terms and conditions of the agreement. When on July 20, 1955, he accepted the offer by making the deposit of $1 for each share then subject to purchase, viz., 770 shares before the split, the contract became effective to the extent that it granted the plaintiff the absolute right to purchase 770 such shares by giving written notice of intent and by paying the price. It further granted to plaintiff a qualified right to purchase 3,080 additional such shares in

separate installments of 770 each during the ensuing five years.

As to each of the four succeeding purchases, conditions precedent were annexed to the right to exercise the option in respect thereto, i. e., the deposit by plaintiff of $1 for each share subject to purchase during the ensuing period and (critical to this action) his continuance in defendant's employ.

This condition of continued employment is spelled out in paragraph 8 and indeed well might be implicit from the circumstances attendant upon making the agreement even if omitted therefrom in express words.

"8. The option herein granted [viz. the right to purchase 770 shares in the first year, and 770 shares in each of the succeeding four years]. shall only be exercised while Employee is employed by the Company * * * " except if employment be terminated by death, retirement or disability in which event the agreement provides that the estate representative has the right within nine months to purchase all the reserved shares which the deceased employee had not theretofore bought. The retired or totally disabled employee has the right to continue to purchase the stock reserved for him as if he had not retired, viz., in annual installments.

The only concession provided for an employee who resigned voluntarily or against his wishes is the allowance of an additional three months beyond such termination of employment within which to exercise the option granted by the agreement qualified as aforesaid.

It is obvious that paragraph 8 means that a former employee shall for three months after termination of his employment enjoy the same rights and privileges of purchasing installments of stock as if he continued in defendant's employ for that three-month period. No greater rights are expressed nor can they be reasonably implied.

Accordingly, plaintiff, having resigned as of March 31, 1957, his rights are to be measured as though he had continued to be "employed by the Company" up to June 30, 1957 (three months thereafter), which is seven days after June 23, 1957, the anniversary date of the agreement. As of that time he had performed or tendered performance in respect of three of the five installments of defendant's shares reserved for him.

As I read the agreement Lutzker exercised the option to purchase 770 shares between December 23, 1955, and June 23, 1956; another 770 shares between June 23, 1956, and June 23, 1957, and another 770 shares between June 23, 1957, and June 23, 1958; no more and no less. This is so even though he did not accept the agreement until July 20, 1955, which was within the 30 days accorded him for that purpose. Having done so, the agreement establishes that the rights of the parties be measured from the date of the offer, June 23, 1955. His rights have been recognized only as to two-fifths of the shares. He demands the entire 3,850 shares before the split. Plaintiff is entitled to an appropriate judgment against the defendant, limited to the third group of shares, and defendant is entitled to judgment on the balance of the claim.

■ The option agreement is clear and unambiguous. Plaintiff's contention that it is ambiguous does not make it so.[3]

■ Plaintiff's further contention that defendant's demand for his resignation was in effect a breach of the option agreement is utterly without merit. The employment of plaintiff was at the will of either party. Nothing appears in the relations between the parties to indicate that there was any intention to enter into a contract for any definite term. Defendant cannot be guilty of "anticipatory breach" of a contract that does not exist.

Settle an order.

3. Whiting Stoker Co. v. Chicago Stoker Corporation, 7 Cir., 1948, 171 F.2d 248, 250.