Keith BROYLES

v.

SYNERCON CORPORATION.

Supreme Court of Tennessee.

July 15, 1974.

Tyree B. Harris, Hooker, Keeble, Dodson & Harris, Nashville, for appellant.

Wilson Sims, Stafford McNamee, Jr., Bass, Berry & Sims, Nashville, for appellee.

OPINION

McCANLESS, Justice.

This case involves construction of the defendant's stock option plan in order to determine the extent to which the plaintiff employee could exercise his option following the termination of his employment. The Chancery Court of Davidson County held that the plaintiff, Keith Broyles, could not exercise the full option following his resignation. The plaintiff has appealed directly to this Court.

The plaintiff, Broyles, was director of office services, personnel, and purchasing

for Forrest Life Insurance Company, a wholly owned subsidiary of the defendant Synercon Corporation. On November 25, 1970, the plaintiff and defendant entered into a stock option agreement which by its terms incorporated the provisions of the "Synercon Corporation 1970 Qualified Stock Option Plan." Plaintiff was granted an option to buy 1,200 shares of common stock at $7.25 per share, in consideration of his continued employment by Synercon.

The following is a summary of the decisive provisions of the Plan:

Section I, "Purposes," states that the Plan "is intended to provide an incentive to certain key employees and executive personnel of Synercon Corporation and its subsidiaries . . . to acquire additional shares of stock in the Company, thereby increasing their personal interest in its continued success and progress and to aid in attracting executives of exceptional ability to the company by offering them the opportunity to acquire a proprietary interest in the business."

Section III, "Administration of Plan," provides that the Plan is to be administered by a Stock Option Committee appointed by the Board of Directors. "All determinations and interpretations made by the Board of Directors shall be binding and conclusive on all employees eligible to participate in the Plan . . . . . ."

Section V sets forth the terms and conditions of the option.

Section V(c), "Option Term," provides that no part of the option may be exercised after five years from the date of the grant of the option. During the five year period, the optionee can purchase a maximum of 20% of the option stock each year. If the optionee fails to purchase his quota during one year, he may purchase that quota in later years. In other words, in the fifth year, if optionee has purchased none of his option stock, he may then exercise his option in full and purchase all of the stock.

Section V(d), "Death of Optionee," provides in full: "Upon the death of an optionee while an employee of the Company or within three months after termination of his employment, his option shall mature as to all shares covered by the option, and such option shall expire unless exercised by his legal representatives or beneficiaries within one year after the date of his death."

Section V(e), "Company's Unqualified Right to Terminate," provides in pertinent part that: "In the event the employment of the holder of an option is terminated, other than by reason of death, the option may be exercised by the holder at any time within three months after such termination but not more than five years after the grant thereof."

In the summer of 1971, an optionee other than the plaintiff, Broyles, requested the Board of Directors to construe Section V(e). The question was whether the optionee, upon resignation or discharge, was entitled to exercise the option for its full number of shares, or whether he was limited to only that number which had accrued under Section V(c). The Board determined that its original intent was to limit the optionee to accrued shares under Section V(c). To avoid future questions, the Board adopted the following resolution:

"RESOLVED: That Section V(e) of the Synercon Corporation 1970 Qualified Stock Option Plan be and the same hereby is interpreted and amended to read as follows:

"'In the event the employment of a holder of an option is terminated for any reason, other than death, the option may be exercised by the optionee only to the extent that the optionee has accrued on the effective date of the termination the right to exercise the option as provided in Section V(c) of the Plan. Any exercise of the option by a terminated employee must be within three months after such termination but not more than five years after the grant thereof.'"

Under the terms of the plaintiff's option agreement with Synercon, his option ran until November 25, 1975. During his first year under the agreement, plaintiff did not exercise his option to buy twenty per cent of his option stock. On November 30, 1971, he tendered his resignation. On February 24, 1972, he sent the company his certified check for the purchase price of all 1,200 shares in an attempt to exercise his option in full. At that time, he was only in his second year of employment since the grant of the option. By agreement, with all rights reserved, plaintiff was issued 480 shares, or forty per cent of the total (twenty per cent for each year since the grant of the option). The plaintiff then commenced his cause of action to recover the remaining 720 shares.

Under the Plan, the only obvious circumstances which would permit exercise of the option in full would be either the running of the five year period, or death. The issue for our determination is whether a third circumstance—termination of employment by resignation—also entitled the optionee to full exercise of the option.

■ The analysis of the issue is affected at every turn by a consideration of what purpose the company intended to fulfill with its stock option plan. Clearly, the purpose of the plan was to provide incentive for key employees to remain with the company. That basic intent is expressed in Section I, "Purposes," (see summary, supra) and in paragraph three of the option agreement, where the purpose is stated to be to "induce employment of the optionee and to furnish incentive for his continued employment." In construing such options, the Court must look to the original purpose of the agreement:

"Generally speaking, a stock option agreement is subject to the same rules of construction as any ordinary option, agreement, or contract. The courts in construing such agreements seek to give effect to the intent of the parties and recognize that their funadmental purpose is to secure and retain the loyal services of desirable officers or employees, either for a stipulated period of employment or at the employer's pleasure." 18 Am. Jur.2d, Corporations, Sec. 303; 96 A.L.R. 2d 176, 180 [1964]; see Commerce St. Co. Inc. v. Goodyear Tire & Rubber Co., 31 Tenn.App. 314, 215 S.W.2d 4 [1948], certiorari denied October 16, 1948.

■ We thus look to the actual language used by the parties in light of the purpose intended by the option. The plaintiff first alleges that Section V(d) of the Plan supports his position. This section allows exercise of the full option "upon the death of an optionee while an employee of the Company or within three months after termination of his employment." This contention is without merit. The section is entitled "Death of Optionee" and its language refers only to that circumstance. In short, the section allows full exercise of the option if the employee dies *while employed, or* if he dies *within three months* of termination of employment. Since plaintiff's rights are predicated upon his resignation, not his death, he can be granted no relief under this section.

The plaintiff next contends that his position is supported by the language in Section V(e):

"In the event the employment of the holder of an option is terminated, other than by reason of death, the option may be exercised by the holder at any time within three months after such termination but not more than five years after the grant thereof."

■ Plaintiff's contention is that the words "the option may be exercised" means the option may be exercised *in full* after resignation. Our construction is otherwise. When construing such an agreement, we are obliged to look to the whole instrument to find its meaning. E.g., Dearing v. Brush Creek Coal Co., 182 Tenn. 302, 186 S.W.2d 329 [1945]. In looking at Sections V(d) and V(e) together, we find that the intention to have the entire option mature prior to the five year

period is stated in specific language and is possible only on the occasion of the optionee's death. In contrast, the language used in Section V(e) regarding terminations "other than by reason of death" is general and evidences no specific intent to give former employees a right to exercise the full option. Our interpretation is supported by the purpose of the plan: to encourage continued employment. This purpose is not effectuated, but is defeated, by the plaintiff's construction of Section V(e).

It places a premium on resignation, but not on continued employment, and results in the unconscionable circumstance of a resigning or discharged employee having rights greater than employees who stay on the job. Freeman v. Copper Range Co., 248 F.2d 20, 22 [7th Cir., 1957]. Of course, we also note that the construction we now give to Section V(e) is that which was originally contemplated by the Board of Directors. The record contains a letter to all optionees explaining this interpretation, which was forwarded to the plaintiff some five months before he resigned. As noted in the summary of Section III, supra, interpretations of the provisions of the Plan by the Board are "binding and conclusive on all employees."

■ Based on its interpretation of Section V(e), the Board adopted a resolution formally amending that Section for purposes of clarification (see amendment set forth, supra). Plaintiff's final argument is that this amendment does not apply to him, principally because of language in Section VIII, "Amendment of Plan." That Section authorizes the Board to amend the Plan at any time, provided, among other conditions, that "no amendment may affect any then outstanding options or any unexercised portions thereof." When reading the entire plan, however, we construe the term "then outstanding options" to mean "other option plans." This meaning is expressed in the next Section, Section IX, "Outstanding Options." Furthermore, we note that the construction which we give to

Section V(e)—based on its actual language, its comparison to other sections, the basic purpose of the plan, and the Board's original interpretation which is in the record—does not necessitate use of the amendment for additional clarification.

The construction which we have given the stock option in this case comports with the general rule. As stated in 96 A.L.R.2d 176, Section 11 at 192 [1964]:

"Provisions in an agreement allowing an optionee, after termination of his employment under certain circumstances, to exercise any theretofore unexercised rights to purchase stock, have usually been construed in the light of the entire instrument so as to permit the optionee, after termination of his employment, to exercise only such options as he was entitled to exercise at the date of termination of employment, or which might have accrued during any additional grace period provided for in the post-employment clause. *Contentions that such a provision should be construed independently of the rest of the agreement so as to accelerate the optionee's right to purchase all stock allotted to him have not been favored.*"

The purpose behind the stock option plan instituted by the defendant company was to enable it to keep its good employees. Once the employee resigns, this purpose is no longer served. Nevertheless, the company, through its plan, makes it possible even for an ex-employee to exercise his option to the same extent as he could have as an employee, for a three month period after his resignation. But we find nothing in the plan or the stock option agreement to give the resigning employee a windfall by virtue of performing an act—termination of employment—which the plan was designed to avoid. Lutzker v. Walter E. Heller & Co., 172 F.Supp. 77 [S.D.N.Y., 1959].

We affirm the decree of the Chancery Court.

DYER, C. J., CHATTIN and FONES, JJ., and LEECH, Special Justice, concur.