**IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE**

| | | |
|---|---|---|
| PERCEPTIVE ADVISORS, LLC, PERCEPTIVE CREDIT OPPORTUNITIES FUND IV, LP, ELLEN HUKKELHOVEN, KBI SERVICES, INC., KINDBODY, INC., TARA COMONTE, RIVKA FRIEDMAN, KATHY HARRIS, LINDA MINTZ, and THERESA SEXTON, | ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) | |
| v. | ) | C.A. No. 2025-1136-MTZ |
| | ) | |
| GINA BARTASI, | ) | |
| Defendant. | ) | |

## ORDER GRANTING ANTI-SUIT INJUNCTION

WHEREAS:

A.     In late 2024, plaintiff KBI Services, Inc. ("Kindbody") underwent a financing round led by plaintiffs Perceptive Advisors, LLC ("Perceptive Advisors"), and Perceptive Credit Opportunities Fund, IV, LP ("Perceptive Credit"). In connection with that financing round, defendant Gina Bartasi, Kindbody's founder and CEO, agreed to several restrictions in several agreements.

     a. In a Separation Agreement, Bartasi stepped down from her positions as CEO and director, and released all claims against Kindbody and its directors with respect to any matters related to her ownership of Kindbody equity and the financing round's term sheet.[1]     The

---

[1] Docket item ("D.I.") 1 Ex. 6 §§ 7, 8.

Separation Agreement has a New York choice of law provision and no forum selection clause, and specifies that other agreements are to be construed in accordance with the terms of those agreements.[2] In the Separation Agreement, Bartasi agreed to support the financing round by voting in favor of it, refraining from backing competing proposals, and executing the transaction agreements.[3]

b. Bartasi also agreed to support the financing round via a Support Agreement and a Voting Agreement that both have a Delaware forum selection clause.[4]

c. To implement the financing round, she agreed to an Amended Certificate for Kindbody with a Delaware forum selection clause;[5] a Stock Purchase Agreement with a Delaware forum selection clause;[6] a Right of First Refusal and Co-Sale Agreement with a Delaware

---

[2] *Id*. § 22.

[3] *Id*. § 6(b).

[4] D.I. 1 Ex. 6, Ex. B § 17 (addressing "any Action between any of the parties arising out of or relating to this Agreement"); D.I. 1 Ex. 2 § 8.14 (addressing "any suit, action or other proceeding arising out of or based upon this Agreement").

[5] D.I. 1 Ex. 1 Art. X (addressing "any derivative action or proceeding brought on behalf of the Corporation," "any action asserting a claim of breach of fiduciary duty owed by any director," and "any action asserting a claim against the Corporation [or] its directors . . . governed by the internal affairs doctrine or that otherwise relates to the internal affairs of the Corporation").

[6] D.I. 1 Ex. 3 § 6.13 (addressing "any suit, action or other proceeding arising out of or based upon this Agreement").

forum selection clause;[7] and a Investors' Rights Agreement with a Delaware forum selection clause.[8] The Stock Purchase Agreement contained a "pay-to-play" provision, under which Bartasi was diluted after she did not participate.[9]

B.     On May 30, 2025, Bartasi sued Perceptive Advisors in New York state court.[10] The complaint alleges Perceptive Advisors "breached its fiduciary duty" to Bartasi by coercing her to resign and diminish her preferred equity rights.[11] The sole cause of action asserts Perceptive Advisors breached its duty of loyalty by coercing Bartasi to sign the release in the Separation Agreement, and seeks a declaration the release is voidable.[12] Bartasi had shared a version of that complaint with Kindbody, Inc. before she filed, and had been convinced not to sue Kindbody, Inc.[13] After Bartasi sued Perceptive Advisors in May, Perceptive Advisors and its affiliates engaged with Kindbody concerning that case.[14] Perceptive Advisors moved to

---

[7] D.I. 1 Ex. 4 § 7.13 (addressing "any suit, action or other proceeding arising out of or based upon this Agreement").

[8] D.I. 1 Ex. 5 § 7.12 (addressing "any suit, action or other proceeding arising out of or based upon this Agreement").

[9] D.I. 1 Ex. 3 § 1.2.3.

[10] D.I. 57 Ex. B.

[11] *Id.* ¶ 4.

[12] *Id.* ¶¶ 54–55.

[13] D.I. 57, Bartasi Aff. ¶¶ 4–5.

[14] *Id.*

dismiss that complaint, asserting, among other arguments, that Bartasi had not pled a breach of fiduciary duty.[15]

C.    On October 1, Bartasi filed an amended complaint in New York, adding Perceptive Credit, Kindbody, and six Kindbody directors as defendants (the "New Defendants").[16]  The amended complaint brought two causes of action:  one for breach of the defendants' duty of loyalty, and one for conspiracy and aiding and abetting breaches of fiduciary duty.[17]   Bartasi alleged all named defendants "breached their fiduciary duties" to Bartasi by coercing her to resign her position and diminish her preferred equity rights.[18]  And she alleged Kindbody and one of its directors conspired with and aided and abetted Perceptive Advisors in breaching its fiduciary duties.[19]  The amended complaint seeks damages, declaratory relief that the Separation Agreement's release is voidable, and Bartasi's reinstatement as Kindbody's Chairman, CEO and Founder.[20]

D.    On October 3, Bartasi moved to enjoin Kindbody from proceeding with a contemplated sale of its assets, which she initially believed was scheduled for mid-

---

[15] D.I. 57 Ex. C.

[16] D.I. 1 Ex. 7.

[17] *Id*. ¶¶ 81, 84.

[18] *Id*. ¶ 12.

[19] *Id*. ¶ 84.

[20] *Id*. at 17.

October of 2025,[21] but now believes will close around the end of the year.[22] Bartasi asserts the 2024 financing round, brought about by disloyal fiduciaries and facilitated by incomplete disclosures, favored Perceptive but "crippled" Bartasi and Kindbody.[23] Bartasi contends the upcoming sale should be enjoined until she can obtain the relief she seeks, namely regaining her equity, voting rights, and Kindbody leadership positions.[24] The New York court is scheduled to hear Bartasi's request for an injunction on October 31, 2025.[25]

E. Perceptive Advisors and Perceptive Credit came to this Court on October 6, seeking an expedited antisuit injunction based on the Delaware forum selection clauses in the Amended Certificate and the financing agreements.[26] Kindbody and its directors quickly joined; the matter was promptly briefed; Bartasi conducted limited discovery; and I heard argument on October 28.[27]

---

[21] D.I. 1 Ex. 8, Ex. 9.

[22] D.I. 70.

[23] D.I. 1 Ex. 8 ¶ 55.

[24] *Id.* ¶¶ 52, 57, 59.

[25] D.I. 66 at 5.

[26] D.I. 1.

[27] D.I. 62.

F.     This Court has broad discretion in granting or denying a preliminary injunction.[28] "A preliminary injunction may be granted where the movants demonstrate: (1) a reasonable probability of success on the merits at a final hearing; (2) an imminent threat of irreparable injury; and (3) a balance of the equities that tips in favor of issuance of the requested relief.  The moving party bears a considerable burden in establishing each of these necessary elements.  Plaintiffs may not merely show that a dispute exists and that plaintiffs might be injured; rather, plaintiffs must establish clearly each element because injunctive relief 'will never be granted unless earned.'  Yet, 'there is no steadfast formula for the relative weight each deserves.  Accordingly, a strong demonstration as to one element may serve to overcome a marginal demonstration of another.'"[29]  This Court will enforce a valid forum selection clause by enjoining a first-filed action that violates it, particularly when an emergency decision is required and there is no opportunity for the first forum to consider whether the action can proceed there.[30]

IT IS ORDERED this 29th day of October, 2025 that:

---

[28] *Data Gen. Corp. v. Dig. Comput. Controls, Inc.*, 297 A.2d 437, 439 (Del. 1972) (citation omitted).

[29] *Village Green Holding, LLC v. Holtzman*, 2018 WL 4849964, at *4 (Del. Ch. Oct. 5, 2018) (collecting cases).

[30] *See Ingres Corp. v. CA, Inc.*, 8 A.3d 1143, 1146–48 (Del. 2010); *Advent Int'l Corp.*, 2024 WL 3580934, at *12–13.

1.    Plaintiffs have demonstrated a reasonable likelihood of success on the merits. As a stockholder, Bartasi is bound by the Amended Certificate. Her May New York complaint asserted derivative claims against Perceptive Advisors,[31] which fall within the Amended Certificate's forum selection clause.[32] Her October amended complaint additionally asserted Kindbody and its directors breached their duty of loyalty, and aided and abetted the predicate breaches.[33] Those claims likewise fall within the Amended Certificate's forum selection clause.[34] Bartasi's

_____

[31] That complaint brought derivative claims for dilution of minority preferred stock, D.I. 57 Ex B. ¶¶ 48, 54, and for diminished corporate value arising from deficient disclosures, D.I. 57 Ex B ¶ 37. Perceptive Advisors' alleged self-dealing impaired Kindbody's coffers and overall value, and harm to stockholders (including Bartasi) was indirect and pro rata. *See Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004) (whether a stockholder's claim is direct (personal) or derivative (on behalf of the corporation) turns on the two-pronged test, i.e.,"(i) who suffered the alleged harm (the corporation or the stockholders, individually); and (ii) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)[.]"); *Brookfield Asset Mgmt., Inc. v. Rosson*, 261 A.3d 1251, 1266 (Del. 2021) (affirming that claims for wrongful dilution or overpayment—even when a controlling stockholder is on the other side—"are exclusively derivative"); *Siegel v. Cantor Fitzgerald, L.P.*, 2025 WL 1074604, at *7 (Del. Ch. Apr. 10, 2025) (dilution claims are derivative because any harm "flow[s] indirectly to [minority stockholders] in proportion to, and via, their shares").

[32] Ex. 1 Art. X. ("Dispute Resolution. Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for any stockholder (including beneficial owner) to bring (a) any derivative action or proceeding brought on behalf of the Corporation . . . .").

[33] D.I. 57 Ex. D.

[34] Ex. 1 Art. X. ("Dispute Resolution. Unless the Corporation consents in writing to the selection of an alternative forum, the Court of Chancery in the State of Delaware shall be the sole and exclusive forum for any stockholder (including beneficial owner) to bring . . . (b) any action asserting a claim of breach of fiduciary duty owed by any director, officer or other employee of the Corporation to the Corporation or the Corporation's stockholder, . . . or (d) any action asserting a claim against the Corporation, its directors, officers or

7

derivative, internal affairs, and fiduciary duty claims must be brought in Delaware, not New York.[35]

2.     Independently, Bartasi contractually chose Delaware for claims based on the financing round. The Support Agreement, Stock Purchase Agreement, and Voting Agreement each contain an exclusive Delaware forum selection clause for any claim "arising out of or relating to"[36] or "arising out of or based on"[37] the agreement or the transactions it governs, with submission to Delaware courts and waivers of venue and personal jurisdiction objections. Her fiduciary duty and aiding and abetting claims arise from the financing round that is the subject of those

---

employees governed by the internal affairs doctrine or that otherwise relates to the internal affairs of the Corporation . . . .).

[35] *See, e.g., Boilermakers Local 154 Ret. Fund v. Chevron Corp.*, 73 A.3d 934, 962–63 (Del. Ch. 2013) (upholding Delaware-exclusive forum bylaws for internal corporate claims); *8 Del. C.* § 115 (permitting charter provisions requiring fiduciary duty and intra-corporate claims to be filed in Delaware); D.I. 1 Ex. 1 Art. X (Delaware-exclusive forum provision).

[36] D.I. 1 Ex. 6 § 17.

[37] D.I. 1 Ex. 2 § 8.14 (binding Perceptive Credit as a contract party); Ex. 3 § 6.13.

agreements, bringing the claims against the New Defendants squarely within those clauses.[38] Bartasi agreed to bring those claims here.[39]

3. Bartasi does not dispute that the Delaware forum selection clauses cover the fiduciary duty claims against Kindbody directors and Perceptive Advisors. Rather, to avoid this conclusion, Bartasi tries to reframe those claims based on the relief she seeks—voiding the release in the Separation Agreement—to argue her claims arise out of the Separation Agreement and do not trigger any Delaware forum selection clause. For this argument to prevail, I would have to blind myself to the claims Bartasi actually brought. And the forum selection clauses apportion actions

---

[38] Under settled Delaware authority, Bartasi's claims asserting the financing was a breach of fiduciary duty and a disloyal "cramdown" must be litigated in Delaware pursuant to the forum selection clauses in the agreements implementing that financing. Delaware courts construe those clauses' broad language, covering "any action" and all disputes "arising out of or relating to" the agreements, to encompass causes of action with a meaningful nexus to the contracts or their subject. *See Newark v. Donald M. Durkin Contracting, Inc.*, 305 A.3d 674, 680 (Del. 2023) (noting Delaware courts recognize the phrases "relating to" and "arising out of" as "paradigmatically broad terms"); *Ashall Homes Ltd. v. ROK Ent. Grp, Inc.*, 992 A.2d 1239, 1252 (Del. Ch. 2010) ("A claim that a party to a contract was fraudulently induced to enter that contract undoubtedly 'originate[s]' or 'stem[s] from the contractual relationship.'") (enforcing an exclusive forum clause against a signatory and held that even tort claims were covered, since all of the plaintiff's claims "arose from the contract" and thus had to be brought in the designated forum); *SPay, Inc. v. Stack Media Inc.*, 2021 WL 1109181, at *3–5 (Del. Ch. Mar. 23, 2021) (enforcing a Delaware forum selection clause for fraudulent inducement arising out of the contract that was induced, and a declaratory judgment for covenants in the contract).

[39] This conclusion means Bartasi also consented to personal jurisdiction in the Court, contrary to her argument that this Court lacks personal jurisdiction over her. *In re Pilgrim's Pride Corp. Deriv. Litig.*, 2019 WL 1224556, at *6 (Del. Ch. Sep. 30, 2019).

9

to Delaware based on the claims brought, not the relief sought.[40]  And the Separation Agreement does not have a forum selection clause that would require that relief to be awarded elsewhere.[41]  Bartasi's internal affairs claims must be brought in Delaware, and a Delaware court can decide if Bartasi has proven that breaches of fiduciary duty warrant voiding the release in the Separation Agreement.

4.      Finally, Bartasi contends the plaintiffs here are guilty of laches or acquiescence.  A laches-based defense requires a showing of knowledge by the claimant, unreasonable delay in bringing the claim, and resulting prejudice to the defendant.[42]  An acquiescence-based defense requires a showing that the claimant, with full knowledge of his rights and the material facts, either (1) "remains inactive for a considerable time"; (2) "freely does what amounts to recognition of the

---

[40] D.I. 1 Ex. 1 Art. X (discussing "any action asserting a claim" for breach of fiduciary duty or governed by the internal affairs doctrine"); *see e.g.*, *SPay, Inc.*, 2021 WL 1109181, at *2 (reading a forum selection clause containing similar language as apportioning cases based on claims brought).

[41] *Ingres Corp.*, 8 A.3d at 1146 ("[Plaintiff] argues that the Court of Chancery erred because one of the executed agreements between the parties did not contain an express forum selection clause.  But in denying [plaintiff]'s motion to stay, the Court of Chancery explained that in determining which contracts governed the various disputes, the court must consider the entire collection of related contracts, including those that contained forum selection clauses specifying Delaware or New York courts as the chosen forum.").

[42] *Advent Int'l, LP v. Servicios Funerarios GG S.A. de C.V.*, 2024 WL 4598884, at *18 (Del. Ch. Oct. 29, 2024).

complained-of act"; or (3) "acts in a manner inconsistent with the subsequent repudiation, which leads the other party to believe the act has been approved."[43]

5.      For the New Defendants, those defenses are easily rejected. Kindbody, Inc. learned Bartasi intended to sue it in May, but Bartasi agreed to remove Kindbody, Inc. from that complaint.[44]  Kindbody had no obligation to respond, and its silence as a nonparty did not prejudice Bartasi in her ongoing litigation against Perceptive Advisors.[45]  Bartasi makes no attempt to show Perceptive Credit or the six directors knew they would be sued at that time.  As soon as Bartasi filed her amended complaint naming Kindbody, its directors, and Perceptive Credit, those New Defendants turned to this Court immediately.

6.      The New Defendants have shown a reasonable likelihood of success on the merits.  The other elements of a preliminary injunction follow.  The New Defendants are suffering, and would continue to suffer, imminent irreparable harm by litigating Bartasi's fiduciary duty claims in a forum other than Delaware.[46]  And

[43] *Klaassen v. Allegro Dev. Corp.*, 106 A.3d 1035, 1047 (Del. 2014).

[44]  D.I. 57, Bartasi Aff. ¶ 5.

[45] *See Advent Int'l Corp.*, 2024 WL 3580934, at *6 n.66.

[46] *Village Green Holding, LLC*, 2018 WL 4849964, at *7 ("[u]nder binding Delaware Supreme Court precedent, a party suffers irreparable harm when forced to litigate in a jurisdiction other than the one selected by a valid forum-selection clause.  This Court consistently has held that the procession of a claim in an unwarranted forum poses a threat of irreparable harm warranting a preliminary injunction.") (internal quotation marks and citations omitted); D.I. 1 Ex. 6 § 9 ("The parties hereto agree that irreparable damage would

11

no harm will come to Bartasi by holding her to the bargain she struck; the New York case against the New Defendants is not so advanced that she will be unduly prejudiced by shifting her case to Delaware.[47] An antisuit injunction is **GRANTED** as to the New Defendants.

7.      Laches and acquiescence are a closer call for Perceptive Advisors. Perceptive Advisors engaged Bartasi's claims on the merits in the New York forum for months before raising any forum selection argument.  After Bartasi sued Perceptive Advisors in May, Perceptive Advisors moved to dismiss in August based on failure to state a claim—not any Delaware forum selection clause.[48]  Bartasi has also affirmed that Perceptive Advisors sought indemnification from Kindbody for those claims before coming here.[49]  Perceptive did not seek to enforce the Delaware forum selection clauses until October, after Bartasi added Kindbody, its directors, and Perceptive Credit as defendants.  Perceptive Advisors had knowledge of the forum selection clauses in its agreements; unreasonably delayed in bringing its claim

---

occur in the event that any of the provisions of this Agreement were not performed in accordance with their specific terms or were otherwise breached.").

[47] D.I. 66 at 21.

[48] D.I. 57 Ex. C.

[49] D.I. 57 Bartasi Aff. ¶¶ 10–12.

12

to enforce them; and prejudiced Bartasi by digging in substantively in New York for months before opening up a second front here.[50]

8.      Perceptive Advisors points out that Bartasi agreed to nonwaiver clauses in the financing agreements, providing that no delay in exercising any right in the financing agreements "shall impair any such right, power or remedy," or be construed as waiver or acquiescence.[51]

> Non-waiver clauses serve an important purpose in contract law, which is generally to ensure that a party to a contract is given an opportunity to make a thoughtful and informed decision about whether or not to enforce a particular contract right. They give a contracting party some assurance that its failure to require the other party's strict adherence to a contract term during the hectic course of day-to-day business will not result in a complete and unintended loss of its contract rights if it later decides that strict performance is desirable. Moreover, with regard to commercial contracts entered into between legal entities that can only act through authorized agents, they ensure that a contracting party will not lose its rights due to spontaneous words and acts of corporate agents. In this sense, non-waiver clauses serve to inform the other contracting party that no individual agent has the authority to waive or alter contract terms. Rather, they make clear that some official act is required in order to actually change the original agreement. Ordinarily, that official action is a signed writing modifying the contract.[52]

---

[50] *See Tracker Marine, LLC v. Pena*, 2017 WL 3528633, at *2–3 (Del. Ch. July 17, 2017); *Naples Ctr. for Dermatology & Cosmetic Surgery, PA v. Trisan*, 2025 WL 1276207, at *4–6 (Del. Ch. May 2, 2025).

Perceptive argues that under New York law, Bartasi's amended complaint permitted it to assert defenses for the first time, even if it had not asserted those defenses against the original complaint. That may be so. But the laches inquiry asks whether Perceptive delayed in bringing its claim before this Court, not whether Perceptive could have wielded a forum selection clause in New York in both October and May.

[51] D.I. 1 Ex. 2 § 8.9; Ex. 3 § 6.11.

[52] *Viking Pump, Inc. v. Liberty Mut. Ins. Co.*, 2007 WL 1207107, at *27 (Del. Ch. Apr. 2, 2007); *accord Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, 2012

9.     Assuming Perceptive Advisors benefits from these provisions, I do not believe they foreclose a finding it is guilty of laches.  In my view, laches is distinct from the claimant's waiver of its rights or acquiescence to a breach of its rights.[53] Waiver and acquiescence speak to the cessation of contractual rights where one party allows the other party to intrude on those rights: a nonwaiver provision is designed to smooth over those intrusions.  But laches speaks to the inequity in allowing the wronged party to bring a claim after unreasonable and prejudicial delay.  I could find no case in which a nonwaiver or "no delay or omission" provision precluded a finding of laches:  rather, Delaware courts have been careful to step around laches when considering these provisions.[54]  I conclude that while Bartasi might have agreed to a "no delay or omission" provision governing contractual rights, that provision, like irreparable harm stipulations, does not bind this Court in considering

WL 3201139, at *26 (Del. Ch. Aug. 7, 2012) ("A nonwaiver clause is designed to give parties a low-cost method of resolving some disputes arising under their agreement.").

[53] *Elster v. Am. Airlines, Inc.*, 128 A.2d 801, 805 (Del. Ch. 1957) (distinguishing laches from express or strict waiver); *Gurney-Goldman v. Goldman*, 321 A.3d 559, 597–98 (Del. Ch. 2024) (considering an argument a plaintiff knew about the defendant's actions and waited too long, and observing, "Laches advances the waited-too-long argument directly. Acquiescence . . . and waiver treat a long delay as implied consent.  Estoppel treats the long delay as an implied representation on which [the defendant] relied.").

[54] *Fidelity Nat'l Info Servs., Inc. v. Rentner*, C.A. No. N24C-09-089 SKR (CCLD), at 9–10 (Del. Super. July 2, 2025) (addressing those provisions' effects on a defense of waiver, but addressing laches separately); *Gower v. Trux, Inc.*, 2022 WL 534204, at *12 (Del. Ch. Feb. 23, 2022) (declining to decide whether such a provision precludes a laches defense); *see Lennox Indus., Inc. v. Alliance Compressors LLC*, 2021 WL 4958254, at *9 (Del. Super. Oct. 25, 2021) (addressing waiver and acquiescence, not laches).

the equities of litigation.[55]  Nor do the nonwaiver provisions amount to a stipulation that delay would not prejudice Bartasi.[56]  Bartasi has made a strong showing that Perceptive Advisors is guilty of laches, and the "no delay or omission" provisions do not preclude this Court from enforcing that equitable doctrine.

10.    Perceptive Advisors' delay weighs against granting it the injunction it seeks.  Its dilatory conduct has tainted its merits position, and its willingness to litigate in New York undermines its claim that doing so amounts to irreparable harm.

11.    But the equities of the situation take into account the strong policy considerations favoring a single, consistent forum for this dispute.  Delaware policy strongly favors adjudicating all closely related claims in the same forum.  Splitting a dispute between two jurisdictions risks inefficiency, conflicting outcomes, and unfairness.[57]  Delaware courts routinely enforce forum selection clauses to confine litigation to the bargained-for forum and avoid parallel suits, as allowing related matters to proceed in different forums "would risk conflicting results, duplicative

---

[55] *E.g.*, *Kansas City Southern v. Grump TMM, S.A.*, 2003 WL 22659332, at *5 (Del. Ch. Nov. 4, 2003)

[56] D.I. 1 Ex. 2 § 8.9; Ex. 3 § 6.11.

[57] *McWane Cast Iron Pipe Corp. v. McDowell-Wellman Eng'g Co.*, 263 A.2d 281, 283 (Del. 1970) (noting the "duplication of time, effort, and expense" that occurs when the same action proceeds in two courts, wasting resources and risking inconsistent judgments); *Ashall Homes Ltd. v. ROK Ent. Grp., Inc.*, 992 A.2d 1239, 1251–52 (Del. Ch. 2010) (stressing bifurcating intertwined claims between courts would lead to "obvious inefficiencies and confusion," and the potential for injustice from parallel litigation is precisely why long-standing doctrines like res judicata and the *McWane* first-filed rule exist—to minimize claim-splitting and discourage forum shopping).

damage awards . . . and undue expense, making the 'efficient administration of justice' unlikely."[58]

12.    And Bartasi will not suffer material harm by having Perceptive Advisors' claims decided in Delaware, given she must bring her claims against the New Defendants here.  In other words, adding Perceptive Advisors to the Delaware proceeding does not inflict more prejudice on Bartasi; it prevents the harm, and added cost to her, from splitting her claims between two fora.  Perceptive Advisors' request for an antisuit injunction is **GRANTED.**

*/s/ Morgan T. Zurn*
Vice Chancellor Morgan T. Zurn

---

[58] *Sprint Nextel Corp. v. iPCS, Inc.*, 2008 WL 2737409, at *17 (Del. Ch. July 14, 2008) (highlighting the duplication of effort and potential for inconsistent judgments if parallel actions were maintained); *Nat'l Union Fire Ins. Co. v. Trustwave Ltd.*, 2017 WL 7803921, at *2 (Del. Super. Dec. 21, 2017).